Cooke, J.
Two New York City policemen, Patrolmen Scarabino and Rollins, were standing on Westgate Avenue near a *200 call box at the intersection of that thoroughfare and Farmers Boulevard in the Borough of Queens. It was August 26, 1970, a bit before midnight. Both were on foot patrol, working adjoining "posts”, and had come to make scheduled rings at the call box which was found to be temporarily out of order. While there and only a few inches apart, they were approached from behind by three men walking south on Farmers Boulevard who, without uttering a word, opened fire. In the ensuing shoot out, the two officers were wounded and hospitalized and one of the men, Harvey Nobles, was killed.
On November 8, 1971 appellant Kim Joyiens, along with his brother Paul, were indicted for attempted murder, two counts of assault in the first degree and possession of a dangerous weapon as a felony. Upon trial, during which defendants denied complicity, a verdict was rendered finding Kim Joyiens guilty on all four counts and Paul Joyiens not guilty in all respects.
On trial, Scarabino was "absolutely positive” in identifying Kim Joyiens as one of the assailants. He testified: that the lighting conditions were very good, a street lamp being connected to the same pole as the call box; that, as he turned around, Nobles and appellant, who were abreast, drew revolvers and started firing at the officers; that the attackers were then about 12 to 15 feet away; that he first shot at Nobles and then once or twice at appellant until he hit the latter; that appellant dropped and moved "back more or less with his left”, twitching his head backward toward the left; that when appellant fired, he faced directly toward Scarabino; that when he, Scarabino, was hit he kept on firing; that upon being hit, Nobles ran to the pole and stopped to reload, whereupon Rollins shot Nobles; that when Scarabino’s gun malfunctioned, he hit Nobles with his radio and Nobles went down; that appellant fired over a brick wall estimated to be three and a half to four feet high; that he, Scarabino, got a good look at the assailants and, that as appellant shot at him, he was looking right at his face; that the incident took two to three minutes; and during this time he, Scarabino, kept the attackers in view. Scarabino described appellant as probably 5 feet 10 or 11 inches in height and that he had an Afro-style haircut, which to him meant "raised up above his skull” and not "flat to his head”.
Patrolman Rollins related that the light on the pole where he and his fellow officer stood was in good condition; that they *201 were approached from behind by the three perpetrators who began firing; that he was shot just as Scarabino yelled something; that the first round of fire went into his left shoulder; that as he turned around he was hit in his left jaw; that he dropped to his knees and fired at Nobles until Nobles stopped firing; that he ran to a house for assistance; and that he was then rushed by police car to a hospital. Dr. Ghassemi, an attending surgeon at the hospital to which Rollins was taken, found a wound of the chest and face, with gunpowder surrounding the latter, same being indicative of a close shot.
Proof was received indicating that on July 6, 1970, appellant, as a prospective employee of a broadcasting system, was physically examined. The report of this examination contained no positive findings or any record of significant scarring. The examining physician stated he would not ordinarily make a notation of a scar unless it was of a very unusual nature or disabling as far as work was concerned. Upon disrobing to the waist in the courtroom, appellant was found to have a linear scar an inch and one-half in length above the left nipple which could have come from a superficial laceration but as to which the doctor could not ascribe the cause with medical certainty. There were also found two elevated round keloid scars, each about a centimeter in length in the left scapula area, and two flat scars on the back. Dr. Gold could not remember whether these scars on the left shoulder were present upon his examination in July of 1970. He stated that they could have been a year and a half old, as well as of other ages, and that they could have come from a bullet and were also consistent with shrapnel. He stated that he would have made a note of it had appellant told him that the scarring was the result of a shrapnel wound.
On June 26, 1971, Detective Newbeck showed a series of photographs to Scarabino who picked out one of appellant. Two days later, the detective arrested appellant. Newbeck observed on him scars at the front, the left and the back of his left shoulder, the ones at the front and back being "[l]ike a bullet going in the front and coming out the back”.
School records indicated that appellant and Nobles attended the Andrew Jackson High School in Cambria Heights during the same four-year-school periods and appellant spoke at Nobles’ funeral, expressing anger and stating this is the first that will die for the revolution or he is one of many who will die for the revolution. Although appellant reported each day *202 for work during August of 1970, on the morning of August 27, 1970 he was 30 minutes late in arriving, tardiness being a common occurrence during his employment.
Appellant related that he is and was on the day in question six feet and one-half inches tall, that his hair is straight and that he never wore his hair in an Afro hairdo. He testified that he did not in any way participate in the shooting of August 26, 1970, that on the evening of that day he was not in the vicinity of Farmers Boulevard and Westgate Avenue, and that he never possessed or fired any firearm from the time of his discharge from military service in 1969 up to the time of the incident in question. It was appellant’s contention that he was at Jackson High School from about 6:30 until about 10:30 during the evening of August 26, 1970, that he then walked his wife-to-be, Lisa, to her home at 190th Street and Jamaica Avenue arriving at about 11:30 p.m., that after watching television for a short while he and Lisa retired for the night and that he did not leave Lisa’s home until about 6:30 the next morning. He explained that the scarring on his left arm, shoulder blade and back was caused, not by bullets but, from two incidents in the course of which he was' struck by shrapnel and metal while serving in Vietnam. For these injuries he did not apply for or receive a Purple Heart and he did not know if they were included in his service record.
The chief point of the dissenter at the Appellate Division seems to be that guilt was not proven beyond a reasonable doubt. A review of the evidence readily reveals adequate proof for submission, as well as the existence of clear-cut issues of fact which were decided by the jury adversely to appellant. There is no dispute that there was an attempt to murder two uniformed police officers at the. stated time and place. The only substantial issue is the sufficiency of the proof establishing appellant as one of the perpetrators. In this regard there is strong testimony against him. Officer Scarabino clearly linked appellant to the crime. His opportunity to identify appellant during the commission of the crimes for which the latter was found guilty was excellent. The lighting conditions were very good, Scarabino was in close range to appellant, they faced each other directly, Scarabino looked right at appellant’s face, the incident took two to three minutes and during this time Scarabino kept his attackers in view. The credibility of appellant’s chief alibi witness was seriously questioned upon the production of three rebuttal witnesses. *203 Illona Gowdey, called by appellant in support of his alibi, testified that on August 26, 1970 appellant and her sister arrived at her house at about 11:00 p.m., watched television for a while and then went to bed. Detective Sewell swore in rebuttal that Illona Gowdey told him that appellant arrived at her house on August 27, 1970 at approximately 2:00 a.m. bleeding from a bullet wound and that she, her sister and Paul Joyiens rendered first aid to him. Detective Pritchard and Officer Brown testified to similar statements by Miss Gowdey, there being mention by her of an injury rather than a bullet wound under their recall. In this respect the court charged that, if the jury found the statements of Illona Gowdey inconsistent, the inconsistency reflected solely upon the credibility of said witness and had no relationship to the commission of "this” crime (see Richardson, Evidence [Prince —10th ed], § 501). Issues of credibility were primarily for the jury and there was sufficient evidence in quantity and quality to send this case to the jury for its verdict (People v Becker; 215 NY 126, 158-159; People v Garafolo, 44 AD2d 86, 88; People v Atlas, 183 App Div 595, 600, affd 230 NY 629). That the photographic identification took place 10 months after the incident was a fact, together with all other attendant facts and circumstances in the record or properly inferable therefrom, to be considered by the triers of fact in evaluating the proof.
Appellant contends that the totality of the evidence produced at the Wade hearing tends to negate the actual occurrence of the photographic display and, alternatively, that if such a display did in fact occur it was suggestive and denied appellant due process. Scarabino and Newbeck presented strong proof that a photographic display was conducted on June 26, 1971, during which Scarabino picked appellant’s picture from the 11 photographs presented before him. In view of the proof that all the photographs were black and white Polaroid prints four by four inches in size, that all were bust-type depictions, that all persons shown were of the same color and of similar stature and build and that at the time Scarabino did not look at the reverse side of the photographs, and in the absence of a showing of any identifying marks on the photographs and despite the fact that the background of defendant’s picture was blank while that in the other photographs was not, the court resolved questions of credibility and had a right to find at the conclusion of the hearing that *204 Scarabino made positive identification of appellant at the time of the shooting and that the photographic identification was not suggestive.
Other alleged errors referred to by appellant have been reviewed and we find in them, either separately or collectively, no basis for reversal.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.