[No. 6334–1–I. Division One. March 24, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. BRADFORD
CHARLES THORKELSON, *Appellant.*

616

John G. Ziegler of Seattle–King County Public Defender Association, for appellant.

Norm Maleng, Prosecuting Attorney, and Philip Y. Killien, Deputy, for respondent.

JAMES, J.—Bradford C. Thorkelson was convicted at jury trial of two counts of first–degree robbery. We affirm one conviction and reverse the other.

In September 1977, the Inglewood Drug Store in Kirkland was robbed by a young man who demanded drugs and brandished a sawed–off shotgun. Three days later, the Noble Pharmacy in Kirkland was robbed in similar fashion. Later that day, based on identification of Thorkelson's car as the getaway vehicle, Thorkelson and his girlfriend were arrested at the Kirkland residence of his girlfriend's mother, Mrs. McGrayne. When arrested, Thorkelson had on his person drug bottles stolen from the Noble Pharmacy.

Eight to twelve armed policemen participated in the arrest. After the arrests and a search of the house for other suspects, Mrs. McGrayne was asked to sign a consent to search form, which she did. A sawed–off shotgun and shells were found in the house and were introduced into evidence against Thorkelson.

After Thorkelson was in custody, four witnesses of the Noble Pharmacy robbery were initially shown a photo montage. Two of the four tentatively, but not positively, identified Thorkelson. A police lineup was held 3 days later; three of the witnesses identified Thorkelson. Those same three identified Thorkelson at trial; each testified that his

identification was based on original recollection rather than on review of either the montage or the lineup.

Shortly before the Inglewood robbery, Julie Tomchick's car was intentionally sideswiped and run off the road in Kirkland by someone in Thorkelson's car. Thorkelson was charged with assault as a result, but before trial the assault charge was dropped because Tomchick was unable to identify Thorkelson as the driver. Thorkelson subpoenaed Tomchick as a defense witness. At the close of the State's case, defense counsel first learned that she could positively identify a friend of Thorkelson's as the man who had run her off the road. On the basis of this newly discovered evidence, Thorkelson moved for a new trial. The motion was denied.

Thorkelson first contends that the police did not receive a valid consent to search Mrs. McGrayne's residence. His theory is that the show of force by the police, police threats to "impound" Mrs. McGrayne's house until they could get a search warrant if she did not consent, and Mrs. McGrayne's "upset" emotional state rendered her "consent" involuntary.

█ The voluntariness of a consent to search must be determined from the totality of the circumstances. *State v. Shoemaker,* 85 Wn.2d 207, 533 P.2d 123 (1975). A trial judge's determination that consent was voluntarily given is to be given great weight on review. But because a fundamental constitutional guaranty is involved, we must conduct an independent review of the record. *State v. Rodriguez,* 20 Wn. App. 876, 582 P.2d 904 (1978). Upon doing so, we agree with the trial judge that Mrs. McGrayne voluntarily consented to a search of her residence.

█ Considering the likelihood that Thorkelson was armed and dangerous and possibly accompanied by others, the police actions were reasonable. The police were within their rights when they stated they would impound her house until a search warrant could be secured. Bowing to events about which one may be unhappy does not render a consent involuntary. *State v. Lyons,* 76 Wn.2d 343, 458

P.2d 30 (1969). That Mrs. McGrayne signed the consent form which outlined her rights is evidence of voluntariness. *State v. Rodriguez, supra.* At no time did she refuse or withdraw her consent.

Thorkelson next contends that all identification evidence from the Noble robbery should have been suppressed. He reasons that

> [a]n identification procedure using a photo montage where the suspect is in custody, absent extenuating circumstances, inherently taints subsequent identifications to the extent that those identifications must be suppressed to afford the defendant constitutional due process guarantees.

We agree that the identification evidence should not have been admitted.

Our Supreme Court has in dicta on two occasions disapproved of the use of photographic identification procedures when a suspect is in custody. A lineup procedure is a more effective, less questionable law enforcement technique, and should be used if possible. *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972); *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977).

In *Hilliard,* the Supreme Court expressly declined to decide whether photographic identification when the suspect is in custody is improper absent a showing of extenuating circumstances. There, the court found an extenuating circumstance—the defendant blatantly tried to thwart a lineup identification by cutting his hair and shaving his facial hair. Here, the State concedes that "[i]t is clear in this state that when a suspect is in custody, a lineup is the preferred procedure. . . . [T]he state will concede that [there were] no overwhelming reasons to have shown the montage, and it should not have been done."

■ In *Nettles* at page 209, although the Supreme Court disapproved of the identification procedure used, it did conclude

> that the photographic identification procedure in the instant case was not so impermissibly suggestive as to

give rise to a very substantial likelihood of irreparable misidentification. The acquaintance of the victims with the defendant was *not of the "fleeting glimpse" variety characteristic of the typical armed robbery;* on the contrary, they spent some time together in a car and attended a party together. At no time did defendant make any effort to disguise himself. Furthermore, the photographic identification was *not a tentative recognition but a positive identification* by an individual who had spent a considerable amount of time in the company of defendant.

(Italics ours.)

Here, each witness had only a fleeting glimpse acquaintance characteristic of a typical armed robbery. Of the three witnesses who subsequently identified Thorkelson at the lineup and at trial, only two were able to choose Thorkelson's photograph as being that of the robber. Both identifications were tentative only.

In view of the disregard for our Supreme Court's longstanding disapproval of such practices, we conclude identification evidence in connection with the Noble Pharmacy robbery should have been suppressed. We hold that, absent extenuating circumstances, photographic identification procedures of an in–custody defendant should not be used. *People v. Anderson,* 389 Mich. 155, 205 N.W.2d 461 (1973); *People v. Holiday,* 47 Ill. 2d 300, 265 N.E.2d 634, 45 A.L.R.3d 948 (1970).

██ The State points out that, despite the use of a post-arrest photographic identification procedure, a subsequent courtroom identification is admissible if it has an independent origin. *State v. Hilliard, supra.* In *Hilliard,* in addition to the extenuating circumstances which justified use of a photographic identification procedure, the court concluded that the in–court identification had an independent origin. The court was so persuaded because the witness had recognized the defendant before the charged assault took place and had spent at least half an hour with him several months earlier. In comparison, the witnesses' opportunity to view the robber in this case was very limited. Two of the

witnesses observed him in passing for only a few seconds from across the room. Neither was aware that a robbery had taken place until after the robber had passed again on the way out. A third witness, the pharmacist, observed the robber as he complied with the demand for drugs. Under these facts, we cannot conclude that the witnesses' recollections were not tainted by being shown the photo montage.

Thorkelson's last contention is that a new trial on the basis of newly discovered evidence should have been granted. We do not agree.

■ The granting of a new trial on the basis of newly discovered evidence is within the sound discretion of the trial judge. The defendant must show that the evidence will probably change the result of the trial, that it could not have been discovered before trial with the exercise of due diligence, that it is material, and that it is not merely cumulative or impeaching. *State v. Franks,* 74 Wn.2d 413, 445 P.2d 200 (1968).

We conclude there was no abuse of discretion. The newly discovered evidence only impeached evidence of Thorkelson's identification as the Inglewood Drug Store robber. Considering the evidence of Thorkelson's guilt, it is unlikely the evidence in question would have changed the result of the trial.

The conviction on count 2 (Inglewood Drug Store) is affirmed; the conviction on count 3 (Noble Pharmacy) is reversed.

CALLOW, C.J., and DORE, J., concur.

Reconsideration denied April 30, 1980.

Review denied by Supreme Court July 18, 1980.