[No. 4250-II.   Division Two.   May 29, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD R. WEDDEL, *Appellant.*

462

*Stephen Whitehouse,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Chris Pomeroy, Deputy,* for respondent.

REED, C.J.—Defendant Donald R. Weddel appeals his conviction of second degree burglary. We affirm.

On March 18, 1979, Larry and Jacqueline Wassman returned to their home in Lacey and discovered a gray Chevrolet Chevelle in their driveway with a young woman in the front seat. After the Wassmans had a brief conversation with the woman, who indicated that she thought their house was the residence of "the Hansons," a man they later identified as defendant Weddel came out from behind the house. He circled on foot to a vacant lot next to the house and then approached the vehicle, asking if the lot was for sale. After the man and woman left, Mr. Wassman, suspicious because of their inconsistent explanations for being at

the house, wrote down the Chevelle's license number, NET 900, and subsequently reported the incident to the police. There was no evidence, however, of any attempted entry to the Wassman residence.

On March 19, Paul and Wendy Johnson, returning from a shopping trip, arrived at their home located approximately seven–tenths of a mile from the Wassman residence. As the Johnsons pulled up to their mailbox across the street from their home, they noticed a gray Chevrolet Chevelle, occupied by two persons, leaving their driveway, some 50 to 75 feet from the mailbox. Dr. Johnson noted the Chevelle's license number, NET 900, and got a brief look at the driver. The Johnsons subsequently discovered that someone had stolen two stereo speakers from their living room after kicking open the front door.

Kelso police arrested defendant on March 20, apparently because he previously had been convicted of burglary and owned a vehicle matching the license number and description the Wassmans and Johnsons furnished. On March 23, while defendant was in custody, Mrs. Wassman positively identified him from a 6–picture photographic array, and on March 26 Mr. Wassman did likewise. Shown the same series of six pictures on March 23, Dr. Johnson tentatively identified defendant's picture as "the only one that looked like the individual I had seen driving the car."

On March 30 the State formally charged defendant with second degree burglary of the Johnson residence. On June 6 an amended information was filed, adding a second count charging attempted second degree burglary of the Wassman residence.[1] Before and during trial, defendant's timely

---

[1] CrR 4.3 governs joinder of offenses in a single trial. It provides in pertinent part:

"(a) **Joinder of Offenses.** Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

"(1) are of the same or similar character, even if not part of a single scheme or plan; or

"(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan;

motions pursuant to CrR 4.4 to sever the attempted burglary count were denied.[2] At trial, defendant presented three alibi witnesses who testified they saw him in Longview at approximately the time the Johnson burglary was committed, but he presented no evidence directed to the Wassman attempted burglary count. Defendant did not testify in his own defense. The jury returned a verdict of guilty on the burglary count and not guilty on the attempted burglary count. Defendant appeals from the burglary conviction, assigning error to the trial court's refusal (1) to sever the attempted burglary count; and (2) to suppress Dr. Johnson's photographic identification of defendant conducted while he was in custody.

Addressing first the issue of severance, we are mindful that joinder of counts should never be utilized in such a way as to unduly embarrass or prejudice one charged with a crime, or to deny him a substantial right. *State v. Smith*, 74 Wn.2d 744, 446 P.2d 571 (1968), *vacated on other grounds sub nom. Smith v. Washington*, 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972). The determination of whether prejudice resulting from joinder of counts is sufficient to warrant severance, however, is within the discretion of the trial court. *State v. Thompson*, 88 Wn.2d 518, 564 P.2d 315

---

"(3) improper joinder of offenses or defendants shall not preclude subsequent prosecution on the same charge for the charge or defendant improperly joined."

[2]CrR 4.4 provides in pertinent part:
"**(a) Timeliness of Motion; Waiver.**
"(1) A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if the interests of justice require. Severance is waived if the motion is not made at the appropriate time.
"(2) If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion.
"**(b) Severance of Offenses.**
"(1) The court, on application of the prosecuting attorney, or on application of the defendant other than under section (a), shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

(1977); *State v. McDonald,* 74 Wn.2d 563, 445 P.2d 635 (1968). The trial court's exercise of this discretion will be overturned on appeal only upon a showing of manifest abuse. *State v. Wills,* 21 Wn. App. 677, 586 P.2d 543 (1978), *review denied,* 92 Wn.2d 1006 (1979).

Defendant contends he was prejudiced by joinder of the attempted burglary charge in three ways. First, he argues the jury may have inferred that because he did not deny being at the Wassman residence, he must also have been at the Johnson residence; thus, joinder "confounded and embarrassed" him in his alibi defense to the Johnson burglary charge. Second, he argues the jury may have cumulated evidence of the crimes charged to find him guilty of the Johnson burglary when it might not have so found if the charges had been tried separately. Third, he argues joinder of the charges frustrated his desire to testify concerning the burglary charge but not to testify concerning the attempted burglary charge.

■■ We believe the first two of these arguments . . clearly are without merit and essentially complain of the same harm—that in their deliberations on the burglary count the jurors may have considered evidence introduced to prove the attempted burglary. Where the general requirements for joinder are met and evidence of one crime would be admissible to prove an element of a second crime, joinder of the two crimes usually cannot be prejudicial. *State v. Pleasant,* 21 Wn. App. 177, 583 P.2d 680 (1978), *review denied,* 91 Wn.2d 1011, *cert. denied, Pleasant v. Washington,* 441 U.S. 935, 60 L. Ed. 2d 664, 99 S. Ct. 2058 (1979); *State v. Kinsey,* 7 Wn. App. 773, 502 P.2d 470 (1972), *review denied,* 82 Wn.2d 1002 (1973); *State v. Conley,* 3 Wn. App. 579, 476 P.2d 544 (1970). The general requirements for joinder of offenses are satisfied in this case because burglary and attempted burglary obviously are offenses "of the same or similar character." CrR 4.3(a). The remaining question, then, is whether evidence of the attempted burglary would have been admissible in a separate trial of the burglary charge. As a general rule, a

defendant must be tried for the offenses charged in the information and evidence of other offenses may not be admitted as proof of guilt of the charged offenses if the evidence is relevant only to prove the defendant's criminal disposition. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). The general rule excluding evidence of uncharged offenses is subject to certain exceptions, the most common of which involve "other crimes" evidence offered to show (1) motive, (2) intent, (3) absence of accident or mistake, (4) common scheme or plan, or (5) identity. The foregoing list of exceptions is not exclusive, however, and the true test of admissibility is whether the other crimes evidence is relevant and necessary to prove an essential ingredient of the crime charged. *See State v. Lew,* 26 Wn.2d 394, 174 P.2d 291 (1946); *State v. Kinsey, supra;* ER 404(b). We believe that evidence of the attempted burglary was admissible to establish defendant's presence in the near vicinity of the burglary a short time before it occurred. *See State v. Cartwright,* 76 Wn.2d 259, 456 P.2d 340 (1969); *State v. Leroy,* 61 Wash. 405, 112 P. 635 (1911); *State v. Norris,* 27 Wash. 453, 67 P. 983 (1902); *State v. Hyde,* 22 Wash. 551, 61 P. 719 (1900). Defendant's presence in the Johnson neighborhood 1 day before the burglary clearly was relevant to an important issue in the burglary prosecution because defendant lived in the Longview/Kelso area (more than 70 miles south of Lacey) and relied on alibi witnesses placing him in Longview at the time of the burglary as a defense to that charge. Accordingly, because evidence of the attempted burglary would have been admissible in any event in a separate trial of the burglary count, joinder of the two offenses did not unduly prejudice defendant either by undercutting his alibi defense or by permitting the jury to cumulate evidence of separate crimes.

We also reject defendant's third argument that joinder effectively denied him the right to testify in his own defense by forcing him to choose between testifying about both crimes or not testifying at all. In support of this argument, he relies principally on *Cross v. United States,* 335

F.2d 987 (D.C. Cir. 1964). In *Cross*, the court vacated convictions of two defendants and remanded for new trials because it concluded that joinder of counts had been prejudicial within the meaning of rule 14 of the Federal Rules of Criminal Procedure, which is substantially similar to CrR 4.4. The court noted that prejudice may develop

> when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence.

*Cross*, 335 F.2d at 989. The defendants in *Cross* did not specify at trial the counts upon which they wished to remain silent and why, but this apparently was because the trial court insisted that the issue of joinder had been determined finally in its denial of a pretrial motion to sever and refused to hear the defendants' arguments. *Id.* at 990 & n.6. Examining the record of the defendants' testimony, the Court of Appeals determined that defendant Cross offered convincing evidence on the count upon which he was acquitted but was plainly evasive and unconvincing in his testimony on the count upon which he was convicted. The court held:

> Thus it would appear that Cross had ample reason not to testify on Count I and would not have done so if that count had been tried separately. In a separate trial of that count the jury would not have heard his admissions of prior convictions and unsavory activities; nor would he have been under duress to offer dubious testimony on that count in order to avoid the damaging implication of testifying on only one of the two joined counts. Since the joinder embarrassed and confounded Cross in making his defense, the joinder was prejudicial within the meaning of Rule 14.

(Footnote omitted.) *Id.* at 990–91.[3]

█ Federal cases decided after *Cross*, however, have indicated that a defendant's mere desire to testify only to one count is an insufficient reason to require severance.

---

[3]The court also vacated the conviction of Cross' codefendant because it concluded that he, too, was prejudiced by Cross' testimony.

*E.g., Alvarez v. Wainwright,* 607 F.2d 683 (5th Cir. 1979); *United States v. Williamson,* 482 F.2d 508 (5th Cir. 1973). Severance is required only if the defendant makes a convincing showing to the trial court that he has both important testimony to give concerning one count and a strong need to refrain from testifying about the other. *United States v. Jardan,* 552 F.2d 216 (8th Cir.), *cert. denied,* 433 U.S. 912, 53 L. Ed. 2d 1097, 97 S. Ct. 2982 (1977); *Baker v. United States,* 401 F.2d 958 (D.C. Cir. 1968), *cert. denied,* 400 U.S. 965, 27 L. Ed. 2d 384, 91 S. Ct. 367 (1970).

> In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

(Footnote omitted.) *Baker,* 401 F.2d at 977. Although he had an opportunity to make such a showing, defendant Weddel did so neither before the trial court nor before this court. Furthermore, we doubt that his testimony could have significantly strengthened his alibi defense in the minds of the jurors, particularly since he produced three witnesses to support that defense. In the absence of evidence to the contrary, we conclude that the overriding reason why defendant chose not to testify was not his fear of incriminating himself on the attempted burglary count, but rather his realization that the State would use a prior burglary conviction for impeachment. Therefore, his third and final argument concerning prejudice caused by joinder of counts is without merit. We hold the trial court did not abuse its discretion in refusing to sever the attempted burglary count.

As his second assignment of error, defendant argues that the trial court erred in admitting Dr. Johnson's photographic identification, relying on *State v. Thorkelson,* 25 Wn. App. 615, 611 P.2d 1278, *review denied,* 94 Wn.2d

1001 (1980). Defendant's statement of the issue is rather vague, and we are unable to determine with assurance whether he objects solely to the fact that a photographic identification was conducted after he was in custody and available for a physical lineup or instead contends that the identification procedure was so impermissibly suggestive as to deny him due process of law. Because he presented both theories to the trial court, however, we will address each in turn.

On a number of occasions Washington appellate courts have criticized the use of a photographic identification procedure when a physical lineup was feasible. For instance, in *State v. Nettles,* 81 Wn.2d 205, 209–10, 500 P.2d 752 (1972), the Supreme Court said:

> We cannot commend the [photographic] identification procedure which was used in this case. Where a defendant is in custody and available for a lineup, a lineup identification procedure would usually be a more effective, less questionable law enforcement technique, and should be used, following the requirements or standards prescribed in *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), and *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967).

In *Nettles,* however, the court upheld the photographic identification used in that case. The court held that a photographic identification denies a defendant due process of law only if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Nettles,* 81 Wn.2d at 209–10.[4] *Accord, Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *and see Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). Thus, although a physical lineup is preferred over a photographic

---

[4]The court also held that the Sixth Amendment right to counsel does not extend to an out–of–court photographic identification, regardless of the fact that the defendant may be in custody at the time. *Nettles,* 81 Wn.2d at 207–09. *Accord, United States v. Ash,* 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568 (1973).

identification when the suspect is in custody, ideal identification techniques are not *constitutionally* required. *State v. Butts,* 16 Wn. App. 828, 560 P.2d 1154 (1977).

Despite its holding in *Nettles,* the Supreme Court in a more recent case cryptically noted that courts in some other jurisdictions limit the use of photographic identification when the suspect is in custody by requiring the existence of extenuating circumstances before such a procedure may be used. *State v. Hilliard,* 89 Wn.2d 430, 438, 573 P.2d 22 (1977). The court declined to decide that issue in *Hilliard,* however, because it found an extenuating circumstance justifying in any event the use of a photographic identification—the defendant had attempted to thwart a lineup identification by cutting his hair and shaving his beard.

With these cases as background, Division One of this court recently reversed an armed robbery conviction resulting from a photographic identification, holding that "absent extenuating circumstances, photographic identification procedures of an in-custody defendant should not be used." *Thorkelson,* 25 Wn. App. at 619. The court noted that the four witnesses in *Thorkelson* had only a fleeting glimpse of the person they later identified as the defendant. Only two of the three witnesses who later positively identified Thorkelson at a lineup and at trial were able to choose Thorkelson's photograph as being that of the robber, and those identifications were only tentative. Referring to the widespread disregard of the Supreme Court's longstanding disapproval of photographic identifications when suspects are in custody, the *Thorkelson* court concluded that all identification evidence in connection with the robbery should have been suppressed.[5] We read *Thorkelson* as adopting a per se rule excluding, absent extenuating circumstances, photographic identifications made while a defendant is in

---

[5]The court held that the subsequent lineup and in-court identification also were inadmissible because they had no independent origin, concluding that the witnesses' recollections probably were tainted by being shown the photographic montage. *Thorkelson,* 25 Wn. App. at 619–20.

custody, without regard to whether the photographic identification procedure contained elements of suggestiveness.[6] Because defendant Weddel argues that *Thorkelson* dictates reversal of his conviction and urges us to adopt a similar rule, we believe an analysis of later Division One identification cases is appropriate.

Several months after *Thorkelson* was decided, another panel of Division One affirmed an armed robbery conviction in *State v. Schultz,* 27 Wn. App. 722, 627 P.2d 107 (1980), although the defendant had been identified through a photographic montage procedure while he was in custody. The *Schultz* court, referring to *Hilliard,* noted that the Supreme Court

> has not decided whether the lineup procedure *must* be used in the absence of extenuating circumstances if the defendant is in custody.

*Schultz,* 27 Wn. App. at 723. The court distinguished *Thorkelson* on the basis that it was a "fleeting glimpse" case, whereas *Schultz* was not. *Id.* at 725. The court seemed to hold, however, that photographic identification of a suspect in custody does not constitute reversible error unless it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

Subsequently, in *State v. Burrell,* 28 Wn. App. 606, 625 P.2d 726 (1981), a third Division One panel affirmed an assault conviction resting on a photographic identification conducted while the suspect was in custody. In an opinion written by the author of *Thorkelson,* a majority of the panel reasoned that although the photographs shown to the

---

[6]The court neglected to indicate what features, if any, of the photographic montage procedure were suggestive. A review of the appellate briefs filed in *Thorkelson* reveals that the montage consisted of 16 photographs of subjects similar in appearance. The defendant mentioned nothing improper about the photographic identification itself other than that he was in custody at the time. Brief of Appellant, at 16–22, 43–52, *State v. Thorkelson, supra.* The defendant did argue, however, that the later physical lineup, at which he was positively identified, was suggestive because he was the only person in the lineup who matched the description of the robber given to police and the only one whose picture also appeared in the photographic montage. Brief of Appellant, at 22, 50.

witnesses were suggestive, there nevertheless were sufficient indications that the identifications were reliable to conclude that the identification procedure did not deny Burrell due process of law. Discussing *State v. Thorkelson,* 25 Wn. App. 615, 611 P.2d 1278 (1980), upon which defendant Burrell relied, the majority said:

> The purpose of placing some restriction upon police identification procedures is to prevent misidentification of suspects by witnesses. The lineup is favored because it is generally considered more reliable and as involving less risk of prejudice and misidentification. . . . The identifications in *Thorkelson* were patently unreliable because the witnesses, who had little opportunity to observe the robber, were subjected to a photo identification procedure whose effect was almost certain to leave them with a recollection of the suspect based on Thorkelson's photograph rather than their original impressions. The denial of due process stemmed not merely from use of a photo montage, but from use of an identification procedure almost calculated to create a serious risk of misidentification.
>
> Identification evidence should be suppressed only where consistent with the purpose of such restrictions, namely, preventing misidentification of suspects by witnesses. *Thorkelson* creates a rule of exclusion somewhat broader in scope than is consistent with this purpose. But the procedure by which identification evidence is obtained is not so determinative of its reliability that a per se rule of exclusion for photographic identifications is appropriate. Insofar as *Thorkelson* may suggest a per se rule of exclusion, we modify its holding.

(Citations omitted.) *Burrell,* 28 Wn. App. at 609–10. The majority went on to hold that a photographic procedure violates due process only if, under the totality of circumstances, the procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The third member of the *Burrell* panel concurred only in the result, interpreting the majority opinion to hold that the violation in *Burrell* of the per se *Thorkelson* rule was harmless under the circumstances in light of the strong

indicia of reliability surrounding the identifications. The concurring judge stated:

> The rule in *Thorkelson* is a salutary one that reduces the risk of misidentification. The majority's purported modification of *Thorkelson* is dicta unnecessary to the decision. The law in this jurisdiction remains that absent extenuating circumstances, a photographic identification procedure should not be used when the defendant is in custody. A violation of this rule requires balancing the inherently corruptive effect of the photo montage and any other suggestiveness against the countervailing indicia of reliability.

*Burrell,* 28 Wn. App. at 612.

After reading the *Thorkelson/Schultz/Burrell* trilogy of cases, we are somewhat uncertain about the current state of the law in Division One regarding photographic identifications conducted while a suspect is in custody. Apparently, in *Burrell,* Division One abandoned the per se *Thorkelson* rule, which would exclude photographic identifications, without regard to the suggestiveness of the photographs or the procedure, unless there exist in the particular case countervailing indicia of reliability. Regardless of whether our reading of those cases is correct, however, until and unless the Supreme Court holds to the contrary, the rule in this division remains that a photographic identification conducted while a defendant is in custody, although not favored, will be suppressed only if it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State v. Butts,* 16 Wn. App. 828, 829, 560 P.2d 1154 (1977); *State v. Nettles,* 6 Wn. App. 257, 260, 492 P.2d 567 (1971). Accordingly, the mere fact that, at the time the photographic identification was conducted in this case, defendant Weddel was in custody and available for a lineup does not determine whether the trial court erred in admitting the identification at trial.

We must decide, then, whether the photographic identification procedure was so impermissibly suggestive as to deny defendant Weddel due process of law by creating a

very substantial likelihood of irreparable misidentification. In *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), the court discussed several possible sources of suggestiveness that heighten the danger that witnesses who had only a brief glimpse of a criminal or saw him under poor conditions may err in making an identification from photographs. These include: (1) the police displaying to the witness only the picture of a single individual who generally resembles the person he saw; (2) the police showing the witness the pictures of several persons among which the photograph of a single individual recurs or in some way is emphasized; and (3) the police indicating to the witness that they have other evidence that one of the persons pictured committed the crime. *Simmons,* 390 U.S. at 383. *See* P. Wall, *Eye–Witness Identifications in Criminal Cases* 73–83 (1965).

Defendant here does not contend that police conduct during the identifications was suggestive. Before and while showing the photographs, the officer said nothing to the witnesses except that he had a series of photographs and wanted them to identify, if possible, anyone that they recognized. Each witness viewed the photographs outside the presence of other witnesses. After making their identifications, the witnesses were instructed to say nothing to other witnesses about the photograph they had selected. The officer rearranged the order of the photographs after each viewing.

Defendant does contend, however, that the photographs themselves are suggestive. Of the six photographs shown to the witnesses, all are Polaroid–type color prints and all depict similar–looking men in their twenties or early thirties with dark hair and moustaches. Defendant's photograph, however, is 4¼ inches wide compared to 4 inches for the others. Furthermore, the six photographs contain three different backgrounds. Three photographs were taken against a light beige metal door, two against a dark wood door, and only defendant's against an off–white wall with

an electrical panel showing. Defendant argued at the suppression hearing that the differences in width and background made his photograph stand out from the others, suggesting to the witnesses which photograph to choose.

▮ Having viewed the photographic array, we conclude that it is not completely free of possible suggestiveness. We believe, however, that the array is not impermissibly suggestive. The difference in width is so slight as to be virtually imperceptible.[7] The difference in background is more troubling, but we are convinced that Dr. Johnson was not influenced in his choice by that feature of the photograph.[8] Any possible suggestiveness was minimized somewhat by the two different backgrounds in the other five photographs.[9] Although the photographic array used in this case was less than ideal, it was not so impermissibly suggestive

---

[7]In *State v. Smith,* 9 Wn. App. 279, 511 P.2d 1032, *review denied,* 82 Wn.2d 1013 (1973), the police showed an 11–photograph array to witnesses to an armed robbery. Eight of the photographs were 2½ by 3½ inches in size, while the other three were 3 by 5 inches. Two of the larger photographs were of the defendant. The court concluded that the photographs were not impermissibly suggestive.

[8]At trial Dr. Johnson was questioned about his photographic identification of defendant as follows:
Q At the time that you observed the photographs, did you notice the background, or were you looking at the person's face for identification purposes?
A I was looking at the faces.
Q Now, looking at the photographs now, do you notice dissimilarity in the backgrounds of the photographs?
A I do.
Q How many differences are there in the backgrounds of the photographs?
A Well, I think the basic difference that I see is the coloration. The last one, as well as a couple of the others, were taken in different locations, but the photograph that I selected is of a different coloration.
Q Did you notice that at the time you made the identification?
A As I was identifying it, I do not think that entered in on my decision whatsoever.

[9]The officer who conducted the identifications received defendant's photograph in the mail from the Kelso police, who were holding defendant in custody. When the officer realized that he would not be able to duplicate the background of defendant's photograph in the remaining photographs, it would have been better procedure to take those photographs against five different backgrounds.

as to deny defendant due process of law.[10] Defendant having failed to establish a constitutional violation, the validity of the identification procedure and the weight to attach to it were questions for the jury to determine.

---

[10]Courts in other jurisdictions consistently have reached the same conclusion when addressing claims of impermissible suggestiveness in similar factual contexts. See United States v. Merryman, 630 F.2d 780 (10th Cir. 1980) (only photograph not bearing numbers, only 1 depicting a Caucasian, and 1 of only 2 in color among those shown); United States v. Lincoln, 494 F.2d 833 (9th Cir. 1974) (only color photograph among 9 shown); United States v. Harrison, 460 F.2d 270 (2d Cir.), cert. denied, 409 U.S. 862, 34 L. Ed. 2d 110, 93 S. Ct. 152 (1972) (only single front–view photograph and only 1 showing clean–shaven face among 7 shown); United States v. Bell, 457 F.2d 1231 (5th Cir. 1972) (only full–length photograph among those shown, where witness had seen criminal standing beside his car); United States v. Magnotti, 454 F.2d 1140 (2d Cir. 1972) (only full–view photograph shown along with 7 "mug shots"); United States v. Cunningham, 423 F.2d 1269 (4th Cir. 1970) (7 out of 14 photographs shown were of defendants, only color photographs were of defendants); United States ex rel. Johnson v. Hatrak, 417 F. Supp. 316 (D.N.J. 1976), aff'd mem., 564 F.2d 90 (3d Cir. 1977), cert. denied, 435 U.S. 906, 55 L. Ed. 2d 497, 98 S. Ct. 1454 (1978) (only photograph bearing legend "Rob." among 16 shown, where defendant charged with armed robbery); United States v. Bostic, 360 F. Supp. 1300 (E.D. Pa.), aff'd mem., 491 F.2d 751 (3d Cir. 1973) (only photograph depicting person with scar on forehead among 8 shown); State v. Hafner, 168 Conn. 230, 362 A.2d 925, cert. denied, 423 U.S. 851, 46 L. Ed. 2d 74, 96 S. Ct. 95 (1975) (defendant's photograph slightly larger than other 6 shown); United States v. Sherry, 318 A.2d 903 (D.C. App. 1974) (only single front–view photograph among 12 shown); People v. Witted, 79 Ill. App. 3d 156, 398 N.E.2d 68 (1979) (only single–view photograph and only 1 without writing on it among 25 shown); Gaddis v. State, 267 Ind. 100, 368 N.E.2d 244 (1977) (defendant's photograph smaller than other 6 shown; only 1 with strip of paper pasted over bottom); State v. Robinson, 386 So. 2d 1374 (La. 1980) (defendant's photograph more yellowed than other 4 shown); State v. Cass, 356 So. 2d 936 (La. 1977) (defendant's photograph 1 of 2 snapshots shown along with 8 "mug shots"); Commonwealth v. Clark, __ Mass. __, 393 N.E.2d 296 (1979) (defendant's photograph 1 of 2 snapshots shown along with 11 "mug shots"); State v. Gomillia, 529 S.W.2d 892 (Mo. App. 1975) (defendant's photograph 1 of 2 which were inch longer and wider than other 9 shown); State v. Farrow, 61 N.J. 434, 294 A.2d 873 (1972), cert. denied, 410 U.S. 937, 35 L. Ed. 2d 602, 93 S. Ct. 1396 (1973) (defendant's photograph inch longer and wider than other 4 shown); People v. Joyiens, 39 N.Y.2d 197, 347 N.E.2d 621, 383 N.Y.S.2d 259 (1976) (only photograph with blank background among 11 shown); People v. Fox, 65 App. Div. 2d 880, 410 N.Y.S.2d 180 (1978) (only non–Polaroid–type photograph among 7 shown; also "several other variations"); State v. Davis, 294 N.C. 397, 241 S.E.2d 656 (1978) (2 photographs of defendant only ones not bearing police department name plate among 14 shown).

Judgment affirmed.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied June 23, 1981.

Review denied by Supreme Court October 16, 1981.