[No. 18386–9–I.   Division One.   December 27, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES
LAWRENCE DOLESHALL, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Katherine B. Wilcox, Deputy,* for respondent.

COLEMAN, A.C.J.—James Doleshall appeals his conviction for three counts of first degree robbery, claiming that his constitutional rights were violated when he was compelled to submit to a lineup for criminal offenses unrelated to the offense for which he was in lawful custody and that the lineup was impermissibly suggestive. Doleshall also challenges his sentence. We affirm.

On November 2, 1985, Doleshall robbed the Gus Cooper Shell Station at knife point. During the robbery, a hidden camera was activated and a color photograph was taken. With this photo, the police were able to identify Doleshall.

On November 5, 1985, Doleshall was arrested and advised of his rights, which he then waived. Once confronted with the photo, Doleshall admitted that he had robbed the Gus Cooper Shell Station. On November 6, 1985, Doleshall appeared in district court where bail was set at $50,000. Later that evening Doleshall appeared in a lineup.

Detective Fann testified that initially Doleshall refused to be taken to the lineup. Detective Fann grabbed Doleshall's arm when Doleshall attempted to walk back to his cell. Doleshall resisted and was then put in handcuffs. Doleshall finally agreed to go to the lineup after Detective Walker explained that they were taking him to see an attorney and that this was the normal procedure.

The witnesses present at the lineup included Welker (the attendant from the Gus Cooper Shell Station) and several witnesses from a number of unrelated robbery incidents. At the lineup, Welker identified Doleshall as the man who

robbed him on November 2, 1985. Four of the other witnesses present at the lineup also positively identified Doleshall as the man who robbed them.

On November 7, 1985, Doleshall was charged by information with robbery in the first degree of the Gus Cooper Shell Station. On November 18, 1985, an amended information was filed charging Doleshall with five additional counts of first degree robbery. At a pretrial hearing, the trial court granted Doleshall's motion to sever the Gus Cooper robbery from the other five counts.

Prior to trial Doleshall moved to suppress the identifications resulting from the lineup on the grounds that there was no probable cause to arrest him for the offenses alleged in counts 1 through 5, the lineup was impermissibly suggestive, and physical force should not have been used to transport him to the lineup.

The trial court denied the suppression motion, concluding that the arrest and lineup for the Gus Cooper Shell Station armed robbery was proper and that given the totality of the circumstances, there was probable cause for the additional counts of armed robberies. The court ruled that the lineup was not impermissibly suggestive and that the force used to take Doleshall to the lineup theater did not invalidate the lineup procedure.

On March 20, 1986, Doleshall was convicted as charged of robbery in the first degree on counts 1, 2, and 4. The jury found Doleshall not guilty on counts 3 and 5.

On March 20, 1986, Doleshall waived his right to a jury trial on count 6, the Gus Cooper Shell Station armed robbery, and submitted the police reports and exhibits to the court. The court found Doleshall guilty. On April 23, 1986, the court sentenced Doleshall to 153 months for counts 1, 2, 4, and 6 to run concurrently. It is from this judgment and sentence that Doleshall appeals.

We first decide whether a person lawfully held in police custody for an armed robbery may be compelled to appear

in a lineup for unrelated crimes for which there may not be probable cause to arrest.[1] For purposes of this portion of his argument, Doleshall concedes that he was lawfully in custody for the Gus Cooper Shell Station robbery. We note that appellant is not appealing his conviction for that robbery. Rather, appellant contends that the police did not have probable cause to arrest him for the crimes alleged in counts 1 through 5 and that, therefore, his constitutional rights under the fourth amendment to the United States Constitution and article 1, section 7 of the Washington Constitution were violated when he was forced to appear in the lineup. We disagree.

We agree that appellant's incarceration did not strip him of all his constitutional rights. *State v. Hartzog,* 96 Wn.2d 383, 391, 635 P.2d 694 (1981). However, once appellant was initially restrained by lawful incarceration for the Gus Cooper Shell Station armed robbery without infringement of any search and seizure rights, the forced participation in the lineup did not constitute an unreasonable search and seizure. *See United States v. Dionisio,* 410 U.S. 1, 11, 14–15, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973). *Accord, People v. Hodge,* 186 Colo. 189, 526 P.2d 309 (1974) (where defendant was in custody as a suspect in a robbery, court held that defendant could be placed in a lineup on another unrelated robbery); *People v. Hall,* 396 Mich. 650, 242 N.W.2d 377 (1976) (because defendant's initial incarceration was lawful, his forced participation in the lineup on an unrelated charge did not constitute an unreasonable search and seizure). Accordingly, Doleshall's Fourth Amendment rights were not violated.

We next address appellant's contention that his right to privacy under article 1, section 7 of this state's constitution was violated. The Fourth Amendment protects individual

---

[1]We have resolved this issue by holding that once a person is in lawful custody, the police have a right to place that person in a lineup for crimes unrelated to the arrest. Therefore, we need not address the issue as to whether there was probable cause to arrest appellant for the offenses alleged in counts 1 through 5.

citizens against unreasonable seizures.[2] The state constitution protects individual citizens against being disturbed in their private affairs without authority of law.[3] In this instance, appellant's right against being disturbed in his private affairs was not violated.

Appellant relies on *In re Armed Robbery*, 99 Wn.2d 106, 659 P.2d 1092 (1983), to support his position. However, *Armed Robbery* does not, as appellant contends, address this situation. In *Armed Robbery,* unlike the present case, the appellant, Mr. T, was not in lawful custody when a court order was sought requiring him to appear in a lineup. Mr. T had not been arrested; he was at liberty.

In *Armed Robbery,* a grocery store had been robbed. The detectives investigating the robbery determined that Mr. T resembled the man described by the two store employees. *Armed Robbery,* at 107. After looking at a group of photos, one of the store employees told the detectives that Mr. T's photo bore a striking resemblance to the man who robbed the store. The employee requested a lineup because he was not convinced, due to the quality of the photograph, that Mr. T was the man who had robbed them. *Armed Robbery,* at 107.

The trial court, relying on a case which authorized a lineup order on less than probable cause, ordered the lineup. Mr. T immediately appealed to the State Supreme Court. *Armed Robbery,* at 108.

The Supreme Court concluded that "an individual may not be ordered to participate in a lineup where no probable cause exists to believe that the individual has committed

---

[2]U.S. Const. amend. 4 provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3]Const. art. 1, § 7 provides:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

the offense under investigation." *Armed Robbery,* at 112. However, the court did not address a situation such as the present case, where an individual was properly under arrest for one of the offenses under investigation. The cases discussed, *supra,* address this latter situation, and we find the reasoning of those cases persuasive.

We hold that the police in the present case were entitled to require appellant to appear in the lineup because they did have probable cause to arrest him for the Gus Cooper Shell Station robbery. Moreover, once it is proper to require a suspect to appear in a lineup, the argument cannot be made that the exposure of his person violates his right to privacy. *Dionisio,* at 14–15. The Court in *Dionisio* held that there is no Fourth Amendment protection for what a person knowingly exposes to the public. No person can "reasonably expect that his face will be a mystery to the world." *Dionisio,* at 14. Here, nothing was being exposed to witnesses attending the lineup that had not previously been exposed to the public at large. *Dionisio,* at 14.

Appellant argues that the police could have easily shown the victims a photo montage. However, this court has held that "absent extenuating circumstances, photographic identification procedures of an in–custody defendant should not be used." *State v. Thorkelson,* 25 Wn. App. 615, 619, 611 P.2d 1278 (1980). "A lineup procedure is a more effective, less questionable law enforcement technique, and should be used if possible." *Thorkelson,* at 618, *overruled in part in State v. Burrell,* 28 Wn. App. 606, 610, 625 P.2d 726 (1981) ("Insofar as *Thorkelson* may suggest a per se rule of exclusion, we modify its holding.").

We next address appellant's contention that he was forced to stand in a lineup which was unduly suggestive. A suggestive procedure such as a lineup is not per se impermissibly suggestive. *Neil v. Biggers,* 409 U.S. 188, 198, 34 L.

Ed. 2d 401, 93 S. Ct. 375 (1972); *State v. Rogers,* 44 Wn. App. 510, 515, 722 P.2d 1349 (1986). A defendant, asserting that a police identification procedure denied him due process, must show that the procedure was unnecessarily suggestive. *Foster v. California,* 394 U.S. 440, 442, 22 L. Ed. 2d 402, 89 S. Ct. 1127 (1969); *State v. Traweek,* 43 Wn. App. 99, 103, 715 P.2d 1148, *review denied,* 106 Wn.2d 1007 (1986); *State v. Booth,* 36 Wn. App. 66, 70, 671 P.2d 1218 (1983). Once a showing is made, the court will consider the totality of the circumstances to determine whether the suggestiveness created a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 116, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Traweek,* at 103. This court need not engage in the balancing test prescribed in *Manson* because appellant has failed to make the preliminary showing that the lineup was unnecessarily suggestive. We agree with the trial court's analysis.

THE COURT: Well, I do not find this lineup impermissibly suggestive. It's true that there are some minor differences in height among the men in the lineup, that the defendant's hair color is slightly lighter; it has some sun streaks in it that the other people don't have.

He seeks to make much of the fact that he has the only receding hairline. I think that there is at least one other person there with a significantly receding hairline, but the other thing I notice is that at the time of the lineup—and there was testimony to this effect—the defendant had pushed his hair back to accentuate the receding hairline. I notice in court and I am sure, if he did commit the robberies, at the time they were committed that his hair naturally falls more toward either side rather than being pulled straight back and that the receding hairline would not have been accentuated to that extent. That's consistent I think with the victim identification.

The red marks on the wrist were noticed apparently only by one of the witnesses, Byles, and he testified that

that was something he noticed only at the last or the end of the lineup procedure. That the first thing he noticed was the defendant's face when he walked into the lineup theater and he was positive it was the defendant and that the red marks on the wrist had no bearing on his identification.

To me, if I were in the theater and had seen the red marks, that would not in any way indicate to me that that person was the defendant. I would not know why the red marks were there and that would not distinguish him for me.

The defendant's demeanor is not in the photograph demonstrably different than that of any other person in the lineup. The witness Byles did not notice the difference in demeanor.

I think the only person in the lineup that is really not within the group by physical appearance is number one, but that still leaves a lineup of five individuals. Number one's hair is just a little too dark, I think. I don't think it's impermissibly suggestive.

■ We also conclude that the amount of force used in getting appellant to the lineup did not invalidate the lineup procedure. A person does not have the right to refuse to appear in a lineup. *United States v. Parhms,* 424 F.2d 152, 154 (9th Cir.) (relying on *United States v. Wade,* 388 U.S. 218, 222, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, 1930 (1967)), *cert. denied,* 400 U.S. 846, 27 L. Ed. 2d 83, 91 S. Ct. 92 (1970). The force employed here was reasonable under the circumstances.

Finally, we address appellant's contention that the trial court incorrectly calculated his offender score for sentencing purposes by not counting his other current convictions served concurrently as one offense. In making this argument, appellant relies on *State v. Taylor,* 47 Wn. App. 118, 734 P.2d 505 (1987). However, the reasoning in *Taylor* was rejected by our Supreme Court in *State v. Jones,* 110 Wn.2d 74, 84, 750 P.2d 620 (1988), which held "other current offenses must be separately considered even if they will be concurrently served." *Jones,* at 85. The trial court correctly calculated appellant's offender score.

The judgment and sentence of the trial court is affirmed.

SWANSON and WILLIAMS, JJ., concur.

Review denied at 112 Wn.2d 1013 (1989).