[No. 12160-3-II. Division Two. August 13, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DEAN ALAN ROYER, *Appellant.*

*Bryan G. Hershman* and *Abolofia & Hershman, P.S.,* for appellant.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *Helen Chabot, Legal Intern,* for respondent.

REED, J.—Dean Alan Royer appeals his first degree robbery conviction. He argues that the photo montage identification procedure was improper because he was in custody at the time the montage was shown to the witness who identified him. Royer also argues that both his Fifth and Sixth Amendment rights to counsel were violated because an officer was allowed to testify regarding his in–custody interrogation of Royer after the appointment of counsel. We reverse.

On April 24, 1987, Kevin Bennett was working as a cashier at a convenience store when two men entered the store. One pulled a gun and demanded money; Bennett complied with the demand.

After the men left, Bennett reported the robbery to the police. For lack of evidence, the police did not pursue the case until several months later when they received an

anonymous tip implicating Royer and one Grissom. Detective Werner, the officer assigned to the case, prepared two photo montages: one including Royer and one including Grissom.

Because Bennett then was living in Virginia, Werner contacted Officer Dudley of the Salem, Virginia, police department, who agreed to show the montages to Bennett. Bennett identified Royer, but not Grissom. Royer, who was in the Shelton correctional facility at the time, was charged with the robbery.

Royer was arraigned for the robbery on March 16, 1988, at which time he requested and was given legal counsel. On March 17, after reading Royer his *Miranda* rights, Detective Werner questioned him at the Pierce County Jail. After stating that he understood his rights, Royer signed a waiver form. Although there was some discussion with Werner concerning the fact that Royer had an attorney, it is unclear who represented him at that time and whether Royer had discussed the present charges with his attorney.[1]

At the suppression hearing Detective Werner testified that Royer made the following statements on March 17, 1988:

1. "I can beat this rap."

2. "I will kill anyone who testifies against me."

3. "I will tell Grissom that he has nothing to worry about."

4. "I will not give you the name of the second suspect."

The trial court denied Werner's Fifth and Sixth Amendment motions to suppress his statements, but did rule out statements one and two as being unduly prejudicial.

Royer also moved to suppress the montage identification, arguing that such a procedure is impermissible when the suspect is in custody. The court ruled that both montages could come into evidence.

---

[1]At the time of the postarraignment interrogation, Royer was represented by assigned counsel. It is not clear that the same attorney represented him at arraignment.

The case went to trial and the jury convicted Royer of first degree robbery.

## SIXTH AMENDMENT RIGHT TO COUNSEL

Defendant argues that his Sixth Amendment right to counsel was violated by Werner's custodial interrogation, and that his statements should have been suppressed. We agree.

▆ The Sixth Amendment right to counsel attaches when the State lodges formal proceedings against an accused. *Arizona v. Roberson,* 486 U.S. 675, 100 L. Ed. 2d 704, 716, 108 S. Ct. 2093 (1988); *State v. Dictado,* 102 Wn.2d 277, 294, 687 P.2d 172 (1984). However, the accused must assert or exercise that right before the police are prohibited by the Sixth Amendment from thereafter initiating custodial questioning without the lawyer being present. *Patterson v. Illinois,* 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1988).[2] Once exercised, the Sixth Amendment guarantees the accused the right to rely on his counsel as a "medium" between himself and the State. *Michigan v. Jackson,* 475 U.S. 625, 632, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986). According to the *Jackson* Court:

> if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his [Sixth Amendment] right to counsel, any waiver of the defendant's right to counsel for that police–initiated interrogation is invalid.

*Jackson,* 475 U.S. at 636.

Consequently, because Royer requested and received legal counsel at his arraignment, the interrogation initiated by Werner was improper, the waiver was invalid, and the entirety of the conversation should have been suppressed on Royer's motion.

---

[2]In *Patterson,* the right to counsel attached upon indictment, but the defendant had not sought legal counsel before his interrogation. Consequently, his waiver, after being given the usual *Miranda* warnings, of both his Fifth and Sixth Amendment rights was held valid.

■ Because we perceive problems with the eyewitness testimony,[3] we cannot conclude that the constitutional error in this case was harmless beyond any reasonable doubt, and Royer's conviction must be reversed.

Because of our holding on the Sixth Amendment, we need not address Royer's Fifth Amendment contention.

## IDENTIFICATION PROCEDURES

■ Royer also argues that it is impermissible to use photographic identification procedures when a defendant is in custody, citing *State v. Thorkelson,* 25 Wn. App. 615, 619, 611 P.2d 1278 (1980). However, this court has declined expressly to follow *Thorkelson,* reasoning as follows:

> a photographic identification conducted while a defendant is in custody, although not favored, will be suppressed only if it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*State v. Weddel,* 29 Wn. App. 461, 473, 629 P.2d 912, *review denied,* 96 Wn.2d 1009 (1981). Because we see no impermissible suggestiveness here, the identification procedure was properly conducted and may be used in any retrial.

Reversed and remanded for a new trial.

PETRICH, A.C.J., and WORSWICK, J., concur.

---

[3]Eyewitness Bennett was positive in his identification of Royer but was mistaken in his identification of Grissom, selecting another individual who was in the Pierce County Jail on the night of the robbery. Bennett conceded that he did not have much time to look at either of the two assailants and that he was hit over the head and knocked senseless by the unidentified suspect.