[No. 50187–4.   En Banc.   May 24, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE L. VAUGHN, *Petitioner.*

*Paris K. Kallas* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

DIMMICK, J.—George Vaughn appeals two robbery convictions, alleging that the admission of the robbery victims' "unreliable" in–court identification testimony violated his

right to due process of law. We hold that where, as here, there is no allegation that impermissibly suggestive identification procedures were utilized, the due process clause does not condition the admissibility of identification testimony upon proof of its reliability. Accordingly, we affirm the convictions.

Vaughn was charged in juvenile court with two counts of first degree robbery. At the fact–finding hearing, 13–year–old Christopher Myers testified that on January 4, 1982, at about 12:30 p.m., he was approached by two teenaged black males in the vicinity of 23rd and Jefferson in Seattle. One teenager, dressed in a cloth jacket, told Myers to turn around, and hit him in the chin. He forced Myers to accompany him to a nearby parking lot, where he ordered Myers to shake out the contents of his backpack. The teenager in the cloth jacket then stole Myers' bus money, kicked him in the head, and punched his right eye. Myers estimated that he had 5 minutes during the robbery to observe the teenager in the cloth jacket. Myers further testified that he tentatively identified Vaughn as the teenager in the cloth jacket at a lineup conducted on January 12, 1982. Over defense objection, Myers made an in–court identification of Vaughn as the teenager who beat and robbed him.

The second of the two robberies charged occurred on January 8, 1982. Fourteen–year–old Jason Finn testified that he and 15–year–old Steve Baretich left Garfield High School in Seattle at about 3:30 p.m. In the vicinity of 23rd and Cherry, four black youths started following Finn and Baretich, and continued to follow them for about 30 to 40 yards. Then, one of the youths kicked Baretich in the back. He fell. Finn testified that he and Baretich were hit and kicked several times. After their assailants left, Finn and Baretich walked toward Garfield High School to report the incident. As they approached the school parking lot, however, the same four youths jumped out of the bushes and attacked Finn and Baretich again, stealing Finn's pocket money, watch, wallet, and black "Members Only" jacket. At

the lineup conducted on January 12, 1982, Finn tentatively identified Vaughn as one of the four robbers. Finn estimated that he had a "minute or two" to observe Vaughn during the robbery, but only 30 seconds when he was able to concentrate on Vaughn's identity. Over defense objection, Finn made an in–court identification of Vaughn as the same person he had identified at the lineup.

Baretich's testimony was similar to Finn's. However, Baretich was unable to make an in–court identification of Vaughn. At the lineup, he had tentatively identified someone other than Vaughn.

Police Officer Gregory Hain testified that, responding to a radio broadcast describing assault suspects, he stopped Vaughn and two other youths on January 8, 1982, at 4:50 p.m., in the vicinity of 25th and Cherry in Seattle. Vaughn was wearing a black "Members Only" jacket. The next day, after reviewing police reports, Hain arrested Vaughn. Vaughn waived his constitutional rights and made a written statement, admitting he was in a fight together with three other youths. In his statement, Vaughn claimed that one of the other youths, Ronald Williams, kicked Finn and/or Baretich, and later sold Vaughn a coat for $15.

Ronald Williams also testified for the prosecution, stating that he was with Vaughn and two other youths on the afternoon of January 8, 1982. He testified that Vaughn started a fight with two white male juveniles and that he and the other two youths participated. Williams also stated that Vaughn stole a black coat from one of the two juveniles.

The juvenile court found Vaughn guilty of robbery in the first degree on the Myers count and robbery in the second degree on the Finn and Baretich count. Vaughn appealed to the Court of Appeals, Division One, contending that Myers' and Finn's in–court identifications were improperly admitted. The Court of Appeals first stated that, since Vaughn had not alleged any impropriety in the pretrial identification procedures, no due process question was presented. *State v. Vaughn,* 36 Wn. App. 171, 172 n.1, 672 P.2d 771

(1983). Concluding that both witnesses had sufficient personal knowledge of the robber's identity to make their in–court identifications admissible, the Court of Appeals affirmed Vaughn's convictions. *Vaughn,* at 173. We accepted discretionary review.

Vaughn does not contend that impermissibly suggestive identification procedures were used in obtaining either the pretrial or in–court identification testimony of Myers and Finn. Instead, his due process challenge to the admissibility of the in–court identification testimony is based upon his allegation that the testimony was not "reliable" under the standard established in *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977).

In *Brathwaite,* an undercover police officer was shown one photograph. From this one photograph, he identified Brathwaite as a man who had sold him heroin. In Brathwaite's subsequent trial for possession and sale of heroin, the undercover officer testified as to his pretrial identification from the photograph, and also made an in–court identification. Following his conviction, Brathwaite filed a petition for habeas corpus in the United States District Court for the District of Connecticut, alleging that the admission of the identification testimony deprived him of due process of law. The District Court dismissed his petition. However, the United States Court of Appeals for the Second Circuit reversed, holding that evidence of the pretrial identification should have been excluded, regardless of reliability, because the undercover officer's examination of the single photograph was unnecessary and suggestive.

The issue, the Supreme Court noted, was whether the due process clause compelled the exclusion, apart from any consideration of reliability, of pretrial identification evidence obtained by a police procedure that was concededly suggestive and unnecessary. *Brathwaite,* at 99. The *Brathwaite* court refused to hold that identification evidence obtained through an unnecessarily suggestive procedure was per se inadmissible. Instead, it concluded that "reliability is the linchpin" for determining the admissibility of

608

identification testimony. Thus, the corrupting effect of the suggestive identification procedure was required to be balanced against certain factors indicating reliability: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Brathwaite,* at 114. The *Brathwaite* court, applying these factors to the facts before it, found that the corrupting effect of the single photograph identification procedure was outweighed by indications of the undercover officer's ability to make an accurate identification, and dismissed Brathwaite's petition. *Brathwaite,* at 114–17.

*Brathwaite* eliminated a line of federal case law which had required the per se exclusion of pretrial[1] identification evidence obtained through unnecessarily suggestive identification procedures. *See, e.g., Brathwaite v. Manson,* 527 F.2d 363 (2d Cir. 1975), *rev'd sub nom. Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Smith v. Coiner,* 473 F.2d 877 (4th Cir.), *cert. denied sub nom. Wallace v. Smith,* 414 U.S. 1115, 38 L. Ed. 2d 743, 94 S. Ct. 848 (1973). Thus, the effect of *Brathwaite* was to expand the range of identification testimony which could be heard by the trier of fact.

■ *Brathwaite* is not on point here. The robbery victims identified Vaughn twice: once at a lineup, and again during the fact–finding hearing. Vaughn, however, has not alleged that either the pretrial or the in–court identifications were tainted by any suggestive identification procedures. Absent such an allegation, there is no need to assess the reliability of Myers' and Finn's identification testimony

---

[1]As was noted in *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977), even those courts which adopted the per se exclusion rule limited its application to the identification testimony immediately derived from the suggestive procedure. Testimony concerning a subsequent identification, including an in–court identification, remained admissible if the subsequent identification was determined to be independently reliable. *Brathwaite,* at 110 n.10.

and engage in the balancing process prescribed in *Brath-waite.* To hold, as Vaughn urges, that due process prohibits the admission of "unreliable" identification testimony, regardless of whether the testimony was obtained through use of suggestive identification procedures, would be to take the *Brathwaite* requirement of reliability completely out of context. Such a holding would also frustrate the purpose of the *Brathwaite* decision, which was to facilitate the admission of identification testimony, not hamper it. This we will not do.

Vaughn attempts to derive support for his interpretation of *Brathwaite* from footnote 9 of that opinion, wherein the Supreme Court acknowledged that reliability was the guiding factor in the admissibility of both pretrial and in–court identifications. *Brathwaite,* at 106 n.9. This misses the point. *Brathwaite* is inapplicable here, not because Vaughn has challenged in–court identification testimony, but because he has not alleged that the testimony was in any way based upon suggestive identification procedures.

Vaughn also contends that, by refusing to apply *Brath-waite* to the present case, the Court of Appeals placed itself at odds with all Washington case law issued since *Brath-waite.* This is incorrect. Many Washington decisions have applied *Brathwaite* where impermissibly suggestive identification procedures were alleged to have been utilized. *See, e.g., State v. Woods,* 34 Wn. App. 750, 665 P.2d 895 (1983); *State v. Burrell,* 28 Wn. App. 606, 625 P.2d 726 (1981). However, Vaughn cites only one decision, *State v. Abernathy,* 31 Wn. App. 635, 644 P.2d 691 (1982), for the proposition that *Brathwaite* should be applied in the absence of any suggestive identification procedure.

*Abernathy* was a challenge to the admissibility of an in–court identification. The defendant did not argue that a pretrial identification procedure was suggestive; he did, however, contend that the in–court identification was "grossly unfair" because he was the only black in the courtroom. *Abernathy,* at 636. Without discussing whether the in–court identification had been based upon a sugges-

tive identification procedure, the Court of Appeals, Division Two, held that *Brathwaite* had established reliability as the prerequisite for the admissibility of both pretrial and in–court identification testimony. Thus, the *Abernathy* court stated, it could no longer rely upon *State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975), in which we refused to condition the admissibility of identification testimony upon its reliability. Applying the *Brathwaite* factors, the *Abernathy* court determined that the in–court identification was sufficiently reliable to be admissible. *Abernathy,* at 637–38.

It is unclear from the *Abernathy* opinion whether the court would have relied upon *Brathwaite* had the defendant not claimed that the in–court identification was unfair because he was the only black in the courtroom. This claim may have been viewed as an allegation that the in–court identification had been obtained through a suggestive procedure, thereby calling the *Brathwaite* reliability test into play. However, to the extent *Abernathy* holds that the *Brathwaite* reliability test must be applied even where no suggestive identification procedures have been used, it misinterprets *Brathwaite,* conflicts with our opinion today, and is hereby disapproved. We reaffirm our holding in *Gosby* that uncertainty or inconsistency in identification testimony goes only to its weight, not its admissibility. *Gosby,* at 760.

Interestingly, our conclusion that *Brathwaite* is not applicable where no suggestive identification procedures have been alleged is supported by yet another Court of Appeals, Division Two, decision, *State v. Weddel,* 29 Wn. App. 461, 629 P.2d 912 (1981). In *Weddel,* the defendant challenged a pretrial identification derived from an allegedly suggestive photographic array. The *Weddel* court held that, although the photographic array was less than ideal, it was not so impermissibly suggestive as to deny the defendant due process of law. It then concluded that, the defendant having failed to establish a constitutional violation, the validity of the photographic array and the weight to attach to the identification were questions for the jury. *Weddel,* at

475–76. Thus, in *Weddel,* a determination that the pretrial identification procedure was not suggestive ended the inquiry. The court did not go on to determine whether the witness' identification was "reliable" under the *Brathwaite* test, as it presumably would have been required to do if reliability were a prerequisite of due process even in cases not involving a suggestive identification procedure. *See also Fillippini v. Ristaino,* 585 F.2d 1163 (1st Cir. 1978) (no need to determine whether in–court identification reliable where pretrial identification procedure not suggestive); *Williams v. McKenzie,* 576 F.2d 566 (4th Cir. 1978) (no need to consider whether there was likelihood of misidentification where pretrial identification procedure not suggestive).

By holding that the *Brathwaite* decision is inapplicable here, we do not suggest that identification testimony which has not been tainted by any suggestive identification procedure is automatically admissible. The testimony of an identification witness, like that of any other witness, is subject to the constraints imposed by ER 602, which provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Under ER 602, a witness must testify concerning facts within his personal knowledge, that is, facts he has personally observed. 5 K. Tegland, Wash. Prac. § 218 (2d ed. 1982). The burden of laying a foundation that the witness had an adequate opportunity to observe the facts to which he testifies is upon the proponent of the testimony. However, the rule requires only that evidence "sufficient to support a finding" of personal knowledge be introduced. Thus, testimony should be excluded only if, as a matter of law, no trier of fact could reasonably find that the witness had

firsthand knowledge. 5 K. Tegland, Wash. Prac. § 219 (2d ed. 1982).

In this case, witnesses Myers and Finn testified as to the identity of a youth who had beaten and robbed them. Each attack occurred during the daytime. Each victim described the attack against him in detail. Myers testified that he had 5 minutes during the robbery to observe the robber whom he later identified as Vaughn. Finn testified that he had a minute or two to observe the robber whom he later identified as Vaughn, with perhaps 30 seconds to concentrate upon the robber's identity. Under these circumstances, we cannot say that, as a matter of law, no trier of fact could reasonably find that Myers and Finn had personal knowledge of the robber's identity. Accordingly, we hold that the trial court did not err in admitting Myers' and Finn's in-court identifications of Vaughn.

The convictions are affirmed.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.