[No. 37350-1-I.   Division One.   August 18, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JASON W. SMITH, *Petitioner*.

346

*O.W. Hollowell*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Scott A. Marlow, Deputy*, for respondent.

WEBSTER, J. — This case concerns the admissibility, under the "speed trap" statute, of a Washington State Patrol pilot's report. The pilot, using stopwatches in conjunction with aerial surveillance traffic marks (ASTMs) painted on the highway, determined that Jason Smith was speeding. As a prerequisite to admitting the pilot's report, the speed trap statute requires that the distance between the ASTMs be "accurately measured off, or otherwise designated or determined."[1] This being an infraction case, which does not require live testimony, the pilot did not personally appear at trial.[2] He submitted an affidavit:

[The ASTMs] are a series of white marks, painted or otherwise

[1]RCW 46.61.470(2).

[2]RCW 46.63.090(2).

permanently affixed to the road surface at one-half mile intervals, by the Washington State Department of Transportation for the purpose of determining vehicle speeds from an aircraft.[3]

The pilot's affidavit does not resolve whether the pilot assumed, rather than knew, that the ASTMs were "accurately measured off, or otherwise designated or determined." Because the State failed to demonstrate the pilot's personal knowledge,[4] it did not satisfy the speed trap admissibility statute, and we dismiss the speeding citation.

## FACTS

Around noon on a December day, Washington State Patrol pilot Ronald McClinton was flying a state patrol airplane and clocking cars traveling on the highway below. McClinton used two stopwatches, in conjunction with aerial traffic surveillance marks, to determine their speeds. Over the course of four ASTMs, McClinton clocked Jason Smith's car at 85, 75, 80, and 71 miles per hour. He radioed to another state trooper, who pulled Smith over and cited him for speeding.[5]

When the King County District Court heard the case, the State, without being represented, relied solely upon the citation and accompanying reports of the citing trooper and the airplane's pilot.[6] Smith argued that the reports were not admissible because they lacked a proper foundation.[7] He did not testify, nor subpoena witnesses. The court admitted the reports, and held that Smith com-

[3]Clerk's Papers (CP) 28.

[4]ER 602.

[5]CP 28, 26.

[6]RCW 46.63.080-.090.

[7]*See* RCW 46.61.470(2).

mitted the violation for which he was cited.[8] Smith appealed to Superior Court, which affirmed the District Court's Finding of Committed.[9] This court granted discretionary review because the case raises an issue of public interest.

## DECISION

■ Smith contends that the district court erred in admitting the testimonial report of the airplane's pilot, trooper McClinton.[10] He argues that (1) the pilot's timing device did not comply with the statute, and (2) the pilot lacked personal knowledge that the Aerial Traffic Surveillance Marks were one half mile apart, or, alternately, that the pilot's knowledge of the interval impermissibly relied upon hearsay. In simpler terms, Smith attacks the foundation for pilot McClinton's testimony. Evidentiary foundations must establish that the evidence is relevant, authentic, and admissible.[11] Smith attacks only the admissibility of the evidence. The burden of establishing the foundation is on the state, who introduced the reports.[12]

Smith was cited after being timed in a "speed trap:"

A " 'speed trap," within the meaning of this section, is a particular section of or distance on any public highway, the length of which has been or is measured off or otherwise designated or determined, and the limits of which are within the vision of any officer or officers who calculate the speed of a vehicle passing through such speed trap by using the lapsed

---

[8]CP 58-59.

[9]CP 4.

[10]*See* RCW 46.63.090(2) (in traffic infraction cases, the court may consider written report of officer in lieu of officer's personal appearance); IRLJ 3.3(c).

[11]STEVEN LUBET, MODERN TRIAL ADVOCACY: ANALYSIS AND PRACTICE at 262 (NITA 1993).

[12]*State v. LeFever*, 102 Wn.2d 777, 787, 690 P.2d 574 (1984).

time during which such vehicle travels between the entrance and exit of such speed trap.[13]

Washington's speed trap statute establishes criteria for evidence to be admissible.[14] When a state trooper clocks cars from an airplane, that statute requires that the timing device, when used to measure the car's elapsed time over a section of highway, indicate the car's speed; the statute also requires that the section of highway used be accurately measured off or otherwise designated or determined:

> Evidence shall be admissible . . . regarding speed if the same is determined by a particular section of or distance on a public highway, the length of which has been accurately measured off or otherwise designated or determined and . . . a timing device is operated from an aircraft, which timing device when used to measure the elapsed time of a vehicle passing over such a particular section of or distance upon a public highway indicates the speed of a vehicle.[15]

Smith attacks the timing device used and also the evidence supporting the accuracy of the length measurement.

### Timing Device

■ Purporting to read the speed trap's language plainly, Smith contends that the officer's timing device must itself indicate the speed of the vehicle.[16] We disagree. The statute anticipates that the timing device will be "used to measure the elapsed time" that the car travels over a particular distance.[17] It requires only that the timing device's measurement of elapsed time, in conjunction with the measurement of distance, will indicate the car's speed:

---

[13]RCW 46.61.470(1).

[14]RCW 46.61.470(1).

[15]RCW 46.61.470(2).

[16]RCW 46.61.470(2).

[17]RCW 46.61.470(2).

> Evidence shall be admissible . . . if the same is determined by a particular section of or distance on a public highway, the length of which has been accurately measured off or otherwise designated or determined and . . . a timing device is operated from an aircraft, which timing device when used to measure the elapsed time of a vehicle passing over such a particular section of or distance upon a public highway indicates the speed of a vehicle[18]

In other words, it allows officers to use any accurate timing device which, through mathematical calculation in relation to the speed trap's distance, yields the car's speed. Here, the pilot certified that the stopwatches were in proper working order and accurate.

### Distance Between Aerial Traffic Surveillance Marks

As to Smith's arguments regarding the ASTMs, we first observe that he does not suggest that live testimony is essential. That would be contrary to the statute's goal of expeditious resolution, and its mandate that the officer need not appear.[19] Defense counsel acknowledges that an admissible written document could establish the accuracy of the distance between ASTMs.[20]

What Smith contends, however, is that the pilot's report submitted in this case is not admissible for the purpose of establishing that accuracy: either the pilot lacked personal knowledge of the distance between the ASTMs, or the pilot must have relied on hearsay testimony to know that they were accurately measured or determined. But the pilot's testimony contains no hearsay; that is, it contains no statements made by someone other than the declarant while testifying:[21]

This section of highway is marked with Aerial Traffic Surveil-

---

[18]RCW 46.61.470(2).

[19]RCW 46.63.010, 46.63.090(2).

[20]*See, e.g.*, RCW 5.44.040, CR 44(a)(1), IRLJ 1.1(c).

[21]ER 801(c).

lance Marks. These marks are a series of white marks, painted or otherwise permanently affixed to the road surface at one-half mile intervals, by the Washington State Department of Transportation, for the purpose of determining vehicle speeds from an aircraft.

. . . .

With the use of stopwatches, in conjunction with the Aerial Traffic Surveillance Marks, I determined the speed of this vehicle to be 85 75 80 71 mph. Each check represents the average speed over a one-half mile distance.

. . . .

The operation described above is consistent with State Patrol procedures and policies. It also complies with RCW 46.61-.470(2) regarding measuring speed from an aircraft.[22]

Because the affidavit does not include hearsay, this case falls squarely within Evidence Rule 602, addressing personal knowledge.

██ Under ER 602, the pilot's statement is admissible if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[23] Because the rule only requires evidence sufficient to support a finding of personal knowledge, courts admit testimony if a "trier of fact could reasonably find that the witness had firsthand knowledge."[24] Stated negatively, the rule bars testimony purportedly relating facts, when they are based only on the reports of others.[25] "Personal knowledge of a fact cannot be based on the statement of another."[26]

Of course, some testimony may be based partially on

[22]CP 28.

[23]ER 602.

[24]State v. Vaughn, 101 Wn.2d 604, 611-12, 682 P.2d 878 (1984).

[25]Hollingsworth v. Washington Mutual Sav. Bank, 37 Wn. App. 386, 393, 681 P.2d 845 (1984).

[26]2 JOHN HENRY WIGMORE, EVIDENCE § 657 (revised by Chadbourn (1979)); 1 McCORMICK ON EVIDENCE § 10 (John W. Strong ed., 4th ed. 1992).

admissible personal knowledge, and partially on reports from others. Under those circumstances, the court must exclude testimony unsupported by personal knowledge. "We think this problem is one of degree. If the belief is primarily based on hearsay, it is inadmissible."[27] "When the witness testifies to facts that he knows partly at first hand and partly from reports, the judge, it seems, should admit or exclude according to the reasonable reliability of the evidence."[28]

■ The crucial passage here is the pilot's sworn statement that the ASTMs are "at one-half mile intervals." From the remainder of the pilot's testimony, the only basis from which we can infer that he knew the distance was a report from someone else: "These marks are . . . painted . . . by the Washington State Department of Transportation."[29] The pilot's affidavit does not resolve whether the pilot assumed, rather than knew, that the ASTMs were "accurately measured off, or otherwise designated or determined."[30] Because the State failed to demonstrate the pilot's personal knowledge, it did not satisfy the speed trap admissibility statute, and the district court erred in admitting the pilot's statement that the ASTMs were one-half mile apart.

We reverse the superior court and order the citation dismissed.

---

[27]*United States v. Mandel*, 591 F.2d 1347, 1370 (4th Cir. 1979).

[28]1 McCormick on Evidence § 10; *see* 5A Karl B. Tegland, Washington Practice: Evidence § 218(3) (3d ed. 1989).

[29]CP 28.

[30]RCW 46.61.470; *compare LeFever*, 102 Wn.2d 777, 787 (witness, whose testimony was based on reports from unidentified third parties, lacked personal knowledge), *with Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763-64 (2d Cir. 1991) (reasonable trier of fact could believe that sales attaché, who had significant responsibilities and control at design studio, had personal knowledge of the source for a particular design).

KENNEDY, A.C.J., and COLEMAN, J., concur.