**FILED**
**JULY 16, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  36488-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NATHAN B. NAVE, | ) | |
| a/k/a NATHAN BRICK NAVE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Nathan Nave appeals after a jury found him guilty of

second degree rape, third degree rape of a child, and third degree child molestation.  The

jury also made a special finding for each offense that it included the aggravating

circumstance of an ongoing pattern of abuse of the same victim under 18 years old.  Mr.

Nave raises several issues on appeal.  We remand to strike the criminal filing fee, but

otherwise affirm.

FACTS

Danielle Valentine gave birth to I.V.[1] in June 2002. Ms. Valentine began dating Nathan Nave when I.V. was 5. The two had twin girls and eventually married. The family lived in a two-level house. I.V.'s bedroom was downstairs next to a living room and the other bedrooms were upstairs.

Once when I.V. was 11, she and Mr. Nave were watching a movie. I.V. fell asleep and, when she awoke, Mr. Nave was touching her under her shorts on her upper thigh. At the time, I.V. thought he was just massaging her legs, but was alarmed because the touching was so far up on her leg.

About two years later, I.V. fell asleep watching a movie in the living room on the opposite side of a couch from Mr. Nave. When she awoke, Mr. Nave was touching her vagina, but above her underwear. I.V. tried to go to her room, but Mr. Nave insisted she stay. He pulled her arm, but she pulled away and went to her bedroom. She did not disclose this incident to her mother, but she stopped watching movies with Mr. Nave.

---

[1] To protect the privacy interests of I.V., we identify her only through the use of initials. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2012_001&div=III.

The next incident occurred in early 2017. I.V. was asleep in her bedroom, facing the wall, and was awakened by someone touching her. The person, whom I.V. later testified as Mr. Nave, massaged her legs, rubbed her back, and touched her vagina. This occurred for 15 to 20 minutes, and I.V. was terrified. The person penetrated I.V.'s vagina digitally. Again, I.V. did not disclose this to her mother.

After that incident, the sexual abuse continued three or four times per week. Each time, I.V. faced the wall and often covered her head with a blanket because she did not want Mr. Nave to know she was awake. I.V. never saw the person who repeatedly abused her during this time nor did the person ever speak to her during the abuse.

In the midst of this abuse, Mr. Nave once acknowledged he had come into her room the prior night. While driving I.V. to school, Mr. Nave said, "[A]bout last night, one of three things could happen. One, you don't tell anyone and I keep doing it; two, you don't tell anyone and I stop; three, you feel like you have to tell someone." Report of Proceedings (RP) at 63. I.V. told him she would not tell anyone and for him to stop. Mr. Nave explained that if she told someone, the family would lose their home. Despite I.V.'s request that he stop, Mr. Nave continued sexually abusing I.V.

On May 12, 2017, I.V. told her mother that Mr. Nave had raped her. Her mother confronted Mr. Nave and told him to leave the house and go to his mother's house

3

because she needed to figure things out.  Mr. Nave then went to his mother's house.  Mr. Nave quit his job, sold his car, and traveled to New York the following day.

On May 31, 2017, the State charged Mr. Nave with one count of rape in the second degree, one count of rape of a child in the third degree, and one count of child molestation in the third degree.  The charges included a special allegation of aggravating circumstances for each count, alleging that the offense was part of an ongoing pattern of abuse of the same victim under 18 years old.  Federal marshals later served an arrest warrant on Mr. Nave in Idaho Falls, Idaho, where he had been staying with his cousin.

*Pretrial motions*

Prior to trial, the State filed a motion to allow evidence that Mr. Nave had touched I.V. when she was 11 and 13.  The State argued the evidence was needed to prove the charged aggravator.  Mr. Nave argued the prior acts were not criminal and nothing happened since the 2013 incident, thus making the acts irrelevant.  The trial court granted the State's motion, ruling the evidence could be admitted under ER 404(b) for the purpose of showing lack of accident, mistake, or intent, and to show an ongoing pattern of abuse.

The State also filed a motion to exclude evidence that I.V.'s cousin had been sexually abused by a family member.  Mr. Nave responded that I.V.'s mother "knows

4

[that I.V.] knew of the allegations [yet she] was somewhat equivocal [about] the timing, but fully admitted that it *could have been* as earl[y] as a month before [I.V.] made her . . . disclosures." RP at 21 (emphasis added). Mr. Nave argued the evidence was important to explain to the jury why I.V. would disclose contrived accusations in May 2017. The State responded that Mr. Nave had no basis to say the cousin's allegations were similar and that Mr. Nave had not made a sufficient offer of proof. The trial court determined that Mr. Nave's offer of proof was too nebulous. The court added that it would reconsider its ruling if Mr. Nave could establish the necessary link between I.V.'s and her cousin's allegations outside the presence of the jury before cross-examining I.V.

Mr. Nave filed a motion to exclude evidence he went to New York after being confronted by Ms. Valentine. He also sought to exclude evidence he attempted to commit suicide. The trial court granted the motion in part, excluding evidence of his suicide attempt, but reserving its ruling on evidence of flight.

*Trial testimony of Mr. Nave*

The State presented its evidence to the jury. Mr. Nave elected to testify in his own defense. He denied ever touching I.V. inappropriately. He also testified that after being released on bond in Idaho, he returned to Washington as quickly as he could and presented himself to the court.

5

During cross-examination, the State began asking questions that Mr. Nave objected to as beyond the scope of Mr. Nave's direct testimony. The trial court excused the jury and heard arguments from both sides.

The State argued it was allowed to broadly question Mr. Nave based on his general denial that he had ever sexually abused I.V. The trial court agreed. Mr. Nave added that if the State questioned him about traveling to New York, he would object. The State argued it was entitled to question Mr. Nave about traveling to New York to counter his testimony that he quickly presented himself to the court. The trial court agreed.

The jury returned, and the State inquired into these areas. Mr. Nave confirmed he went to his mother's house after he was told to leave his house. He also confirmed he had two young biological daughters who continued to live in the house, was a father figure to I.V., yet quit going to work, placed his car for sale, and the next day traveled to New York.

*Verdict and sentencing*

The jury found Mr. Nave guilty of all three counts and answered yes to the special verdicts for the pattern of abuse aggravator charged on each count. The court sentenced Mr. Nave to 194 months to life confinement. The court imposed $800 in legal financial obligations, including $200 for the criminal filing fee.

Mr. Nave timely appealed.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Mr. Nave contends there was insufficient evidence to sustain his convictions. He argues the statements made by I.V. were inconsistent, and she could not identify him as her attacker. He further argues that his statement/confession to her while driving was not sufficient to convict him under principles of corpus delicti. We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

Mr. Nave first argues I.V.'s statements were inconsistent and that she could not have identified him as her abuser. He emphasizes that I.V. testified she never saw her abuser and the abuser never spoke to her.

Identity of the defendant is one of the elements all crimes share that must be proved beyond a reasonable doubt. *State v. Thomson*, 70 Wn. App. 200, 211, 852 P.2d

1104 (1993), *aff'd*, 123 Wn.2d 877, 872 P.2d 1097 (1994). Where testimony of identification is unclear or inconsistent, the uncertainty only goes to the testimony's weight, not its admissibility. *State v. Vaughn*, 101 Wn.2d 604, 610, 682 P.2d 878 (1984). Issues of witness credibility are matters exclusively reserved for the finder of fact and this court will not review them on appeal. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Here, I.V. testified she always faced the wall when her abuser was touching her and her abuser never spoke to her. However, the jury had to weigh that fact against other facts supporting I.V.'s ability to identify Mr. Nave as her abuser. First, Mr. Nave had touched I.V. inappropriately while she slept before. Second, the touching was sexual and ongoing multiple times per week for several weeks. Mr. Nave was the only male in the house, and he had unfettered access to I.V.'s basement bedroom. Not even Mr. Nave argued that I.V.'s abuser was one of her younger sisters or her mother, all of whom slept upstairs. Third, and most important, Mr. Nave admitted he had abused her on one occasion when he gave her various choices of whether to report the abuse or not. Based on these facts, the jury was given the opportunity to weigh I.V.'s credibility and decided her identification of Mr. Nave and her accusations against him were credible. We will not disturb the jury's credibility findings.

Mr. Nave also argues that his admission to I.V. is insufficient to convict him under the principles of corpus delicti. The State argues that Mr. Nave did not properly assign error to this issue. We use our discretion to review the issue because it is simpler to refute Mr. Nave's argument than to explain whether the argument is reviewable under RAP 2.5(a).

Corpus delicti principles protect a defendant from being convicted through false confessions by requiring the State to show evidence of the "body of the crime." *State v. Aten*, 130 Wn.2d 640, 655-57, 927 P.2d 210 (1996). Corpus delicti involves two elements: (1) an injury or loss (2) caused by someone's criminal act. *State v. Cardenas-Flores*, 189 Wn.2d 243, 263, 401 P.3d 19 (2017).

Here, I.V. testified she was sexually assaulted over a period of several weeks by a person entering her room at night while she slept. This was sufficient evidence of injury caused by someone's criminal act.[2]

We conclude the State presented sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Mr. Nave was the person who sexually abused I.V. in the spring of 2017.

---

[2] We note that "identity" is not an element of corpus delicti. *See Cardenas-Flores*, 189 Wn.2d at 264 n.9. Nevertheless, as mentioned previously, there was substantial evidence that Mr. Nave was the person who repeatedly abused I.V. in the spring of 2017.

B.      EVIDENCE OF MR. NAVE'S FLIGHT

Mr. Nave next contends the trial court erred by allowing the State to present

evidence he traveled to New York following Ms. Valentine confronting him about I.V.'s

allegations.  He argues evidence of flight was minimally relevant and the prejudice

outweighed whatever relevance there was.  We disagree.

When reviewing a trial court's evidentiary ruling, this court reviews for abuse of

discretion.  *Peralta v. State*, 187 Wn.2d 888, 894, 389 P.3d 596 (2017).  Abuse of

discretion is only found where the trial court's decision is "'manifestly unreasonable, or

exercised on untenable grounds, or for untenable reasons.'"  *Ugolini v. Ugolini*, 11 Wn.

App. 2d 443, 446, 453 P.3d 1027 (2019) (internal quotation marks omitted) (quoting *State

v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009)).

Under the rules of evidence, evidence is relevant if it has "any tendency to make

the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." ER 401.  Evidence of a

defendant's flight is generally admissible as circumstantial evidence in determining guilt.

*State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965).  The principle behind this is

that a defendant's flight is an instinctive or impulsive reaction to a consciousness of guilt

or is a deliberate action made in order to avoid prosecution.  *Id.*  Nevertheless, the

relationship between flight and the inference of guilt "must be substantial and sufficient to create a reasonable and substantive inference that the defendant's departure from the scene of difficulty was an instinctive or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution." *Id.* at 112-13.

Mr. Nave first argues the evidence he traveled to New York is minimally probative because it does not show an impulsive or instinctive reaction to a consciousness of guilt. He argues he did not immediately flee from the scene as is the case for most defendants in flight, but instead flew to New York the following day.

We have found evidence of flight to be admissible even when the defendant's flight did not occur until one week after the commission of the crime. *State v. Bryant*, 73 Wn.2d 168, 172, 437 P.2d 398 (1968). Here, Mr. Nave knew that I.V. told her mother he had raped her and knew she might contact law enforcement. Mr. Nave went to his mother's house, quit his job, sold his car, and the next day traveled to New York.

Mr. Nave argues he did these things because he was told to leave the house. But a trier of fact could reasonably disagree and find that Mr. Nave took these extreme steps because he knew that I.V.'s accusations were true and he sought to avoid arrest and prosecution.

11

Mr. Nave next argues the prejudicial effect of evidence of flight substantially outweighed its probative value. But ER 403 does not preclude prejudicial evidence, not even unduly prejudicial evidence. Instead, ER 403 precludes "unfair[ly]" prejudicial evidence. Mr. Nave does not explain why evidence of flight was unfairly prejudicial. To the extent his unfair prejudice argument is tied to his assertion he traveled to New York because he was told to leave his house, we are unpersuaded. Mr. Nave left his house as instructed and went to his mother's house. He never explained why he took the additional steps of quitting his job, selling his car, and traveling across the country. Here, there was a reasonable and substantial inference that Mr. Nave did these things as an impulsive reaction to evade arrest and prosecution.

We conclude the trial court did not abuse its discretion by allowing evidence of Mr. Nave's flight—quitting his job, selling his car, and traveling to New York.

C.      EVIDENCE OF MR. NAVE'S PRIOR ABUSE OF I.V.

Mr. Nave contends the trial court abused its discretion by allowing the State to present evidence he touched I.V. when she was 11 and 13 years old. He argues the prior acts were not criminal and, therefore, not relevant. He also argues whatever minimal probative value the evidence had was outweighed by the unfair prejudice the evidence had on the jury. We disagree.

12

No. 36488-7-III
*State v. Nave*

Prior bad acts cannot be used to show propensity to commit a crime, but they can be used for other reasons such as to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b).

The State charged Mr. Nave with a special aggravator that the attacks against I.V. were part of a pattern of abuse against her and that she was under 18 years old. Evidence of prior abuse would have a tendency to make proof of this aggravator more probable. Additionally, identity was a key issue at trial and remains a key issue on appeal. Although the trial court did not cite "identity" as a reason for admitting the prior uncharged acts, we may rely on it to affirm.[3] Evidence that Mr. Nave inappropriately touched I.V. while she slept in the basement when she was 11 and 13 years old is relevant to who touched I.V. numerous times for several weeks while she slept in the basement when she was 14 years old.

Mr. Nave first argues the prior actions were not overtly sexual and, therefore, are not relevant to establish a pattern of abuse. In isolation, the first touching that occurred high on I.V.'s thigh while she slept might be innocent. But two years later, Mr. Nave

---

[3] "[W]e consider bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995); *see also Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 498, 415 P.3d 212 (2018) (trial court's evidentiary ruling will not be disturbed on appeal if it is sustainable on alternative grounds).

touched I.V.'s vagina while she slept, albeit over her underwear. Taken together, a reasonable trier of fact could find that both touchings were part of a pattern of abuse.

Mr. Nave next argues that the probative value of the prior touchings were minimally relevant and substantially outweighed by their unfair prejudice. But because the State was required to prove identity, we cannot conclude the trial court abused its discretion. This is especially true given the similarity of the events. The prior events and the charged events occurred in the basement and the prior events and the charged events occurred at night while I.V. was sleeping. The prior events were highly probative to prove identity.

D.     EVIDENCE OF I.V.'S COUSIN MAKING A SEPARATE CLAIM

Mr. Nave contends the trial court abused its discretion by excluding evidence that I.V.'s cousin reported she was sexually abused at about the same time I.V. reported that she had been sexually abused. He argues the evidence was highly probative because it explained why I.V. contrived her allegations when she did. The State responds that the trial court did not preclude the evidence. Rather, it required a clearer offer of proof. We agree.

Prior to trial, the State filed a motion to preclude evidence that I.V.'s cousin was sexually abused. Mr. Nave responded that I.V.'s mother knew that I.V. had heard about

14

her cousin, but that her mother was uncertain when I.V. had heard about it. The trial court decided that Mr. Nave's description of the evidence was too nebulous. The court excluded the evidence, subject to Mr. Nave establishing a nexus between I.V.'s and her cousin's allegations. The court told Mr. Nave he could raise the issue again prior to cross-examining I.V.

But Mr. Nave did not raise the issue again. He failed to make a specific offer of proof of what I.V. knew and when she knew it.

In *State v. Burnam*, 4 Wn. App. 2d 368, 421 P.3d 977, *review denied*, 192 Wn.2d 1003 (2018), we emphasized the importance of a specific offer of proof. We said an offer of proof should (1) inform the trial court of the legal theory under which the offered evidence is admissible, (2) inform the trial court of the specific nature of the offered evidence so the court can judge its admissibility, and (3) create an adequate record for appellate review. *Id.* at 377. An offer of proof must not be so vague as to require the trial court to speculate about the nature of the evidence. *Id.*

Here, the trial court tentatively excluded the evidence because Mr. Nave's offer of proof was nebulous. Mr. Nave did not explain how I.V.'s mother knew she had heard of her cousin's sexual abuse or when she had heard about it. The mother's testimony might be excluded on the basis of hearsay. Also, I.V. might testify that she did not know her

cousin had made a similar allegation or that she heard about the allegation after she had told her mother that Mr. Nave raped her.  Either way, the trial court justifiably required Mr. Nave to raise the issue again once he could make a proper connection between I.V.'s and her cousin's allegations.

Mr. Nave additionally argues the trial court's ruling deprived him of his due process right to present a defense.  We disagree.  The trial court allowed Mr. Nave to develop the necessary connection between I.V.'s and her cousin's allegations outside the presence of the jury and suggested it could be done prior to I.V.'s cross-examination.  Mr. Nave did not do this.

Because Mr. Nave's offer of proof was not sufficiently specific, we conclude the trial court did not abuse its discretion by excluding it until Mr. Nave could make a sufficient offer of proof.

E.      SCOPE OF CROSS-EXAMINATION

Mr. Nave contends the trial court abused its discretion by allowing the State to cross-examine him beyond the scope of his direct testimony.

Challenges to the scope of cross-examination are reviewed for manifest abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014).  Abuse of discretion is only found where the trial court's decision is "'manifestly unreasonable, or

16

exercised on untenable grounds, or for untenable reasons.'"  *Ugolini*, 11 Wn. App. 2d at

446 (internal quotation marks omitted) (quoting *McCormick*, 166 Wn.2d at 706).

ER 611(b) provides:

Cross examination should be limited to the subject matter of the direct
examination and matters affecting the credibility of the witness.  The court
may, in the exercise of discretion, permit inquiry into additional matters as
if on direct examination.

First, the second sentence of ER 611(b) refutes Mr. Nave's argument that a trial

court abuses its discretion by allowing cross-examination beyond the scope of direct

testimony.

Second, when a subject is opened on direct examination, the cross-examination

may explore the subject in its various stages.  *State v. Hayes*, 73 Wn.2d 568, 571, 439

P.2d 978 (1968).  This rule does not confine the cross-examination to only the questions

asked on direct, and the cross-examination may delve deeper into the subjects raised.

*State v. Rushworth*, No. 36077-6-III, slip op. at 8 (Wash. Feb. 20, 2020) (published in

part), http://www.courts.wa.gov/opinions/pdf/360776_pub.pdf.

Mr. Nave argues the trial court erred by allowing the State to question him about

the uncharged touchings that occurred when I.V. was 11 and 13 years old.  We disagree.

In *State v. Solomon*, 5 Wn. App. 412, 420, 487 P.2d 643 (1971), the defendant elected to

testify and briefly denied he committed the charged crimes.  The State, over defense

17

objections, cross-examined him about where he was the night of the crime. *Id.* We

concluded that the trial court did not abuse its discretion by allowing the cross-

examination because it explored the various phases of the defendant's general denial. *Id.*

at 420-21.

Similarly, Mr. Nave elected to testify, and he denied he had ever touched I.V. in an

inappropriate manner. This claim permitted the State to question him about the previous

uncharged touchings about which I.V. had already testified. As mentioned previously,

those touchings were not excludable under ER 404(b) as evidence of prior bad acts

because those touchings were relevant to the charged aggravating factor and to whether

he was the person who came into I.V.'s room throughout the spring of 2017 and

repeatedly abused her.

Mr. Nave next argues the trial court erred by allowing the State to question him

about his travel to New York. We disagree. Mr. Nave testified on direct that after he was

arrested in Idaho and posted bail, he returned to Washington as quickly as he could and

presented himself to the court. This testimony gave the jury the impression that Mr. Nave

was eager to defend against the charges. The State was permitted to challenge this

impression with evidence that Mr. Nave was not eager to defend against the charges. Ms.

Valentine had already testified that Mr. Nave telephoned her shortly after she told him to

18

leave the house and the telephone number of his incoming call showed he was calling

from New York. The State was entitled to question Mr. Nave about this and to argue this

showed that Mr. Nave was not eager to face the charges.

We conclude the trial court did not abuse its discretion in allowing the State to

cross-examine Mr. Nave on these two subjects.[4]

F.     CRIMINAL FILING FEE

Mr. Nave contends the trial court erred by imposing a $200 criminal filing

fee. He argues the trial court found that he was indigent for purposes of appeal, and

RCW 10.01.160(3) expressly prohibits trial courts from imposing discretionary legal

financial obligations on defendants who are indigent at the time of sentencing. He

correctly cites RCW 36.18.020(2)(h) to support his argument that the criminal filing fee is

a discretionary cost.

We exercise our discretion and review this claim of error that was not preserved

below by an objection. We direct the trial court to strike the criminal filing fee.

_____

[4] Because we conclude that the trial court did not abuse its discretion in any of its
evidentiary rulings, we need not address Mr. Nave's argument that cumulative error
requires reversal and a new trial.

No. 36488-7-III
*State v. Nave*

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

SAG I: SUFFICIENCY OF THE EVIDENCE

Mr. Nave contends the elements of his case were not proved beyond a reasonable doubt and that the evidence against him was speculative. In making this argument, he challenges the sufficiency of the evidence with respect to I.V.'s identification of him as her abuser. We have already analyzed and rejected this argument.

SAG II, III: LACK OF GRAND JURY INDICTMENT

Mr. Nave raises two separate arguments that contain the same core complaint— that he was not indicted by a grand jury. These arguments are based on the mistaken belief that a defendant has a guaranteed constitutional right to be indicted by a grand jury. A defendant does not have such a right. *See State v. Jefferson*, 79 Wn.2d 345, 485 P.2d 77 (1971).

In Washington, the State has four options for the procedure it uses to file a criminal complaint. *Id.* at 347. It may (1) file the complaint with the superior court, (2) seek a grand jury indictment, (3) initiate inquest proceedings, or (4) file a criminal complaint before a magistrate for a preliminary hearing. *Id.* Any of these methods are allowed under Washington law and the Washington Constitution. *Id.* Here, the State filed the complaint with the superior court.

20

Neither the Washington nor federal constitutions guarantee a defendant the right to a grand jury indictment. *Id.* at 347-48. As noted in *Jefferson*, the ability for a prosecutor to choose to file a criminal complaint is upheld by the United States Supreme Court. *Id.* at 348 (citing *Beck v. Washington*, 369 U.S. 541, 545, 82 S. Ct. 955, 8 L. Ed. 2d 98 (1962)). For this reason, a defendant is not guaranteed the right to a grand jury indictment as the Court in *Beck* noted. 369 U.S. at 545.

SAG IV; SAG V: LACK OF PRELIMINARY FINDING OF PROBABLE CAUSE

Mr. Nave again raises two arguments that contain the same core complaint. His core complaint here is that he was denied a preliminary hearing where a neutral magistrate could have determined there was insufficient probable cause for him to be arrested and prosecuted.

Mr. Nave is mistaken. The record shows that a hearing occurred in late May 2017, in which the trial court reviewed an affidavit establishing probable cause and found probable cause for Mr. Nave's arrest and detention. Although the order does not specifically identify the affidavit reviewed, we note the court record at the time included a May 25, 2017 certified statement by Detective Brandon Armstrong that set forth detailed and sufficient facts for Mr. Nave's arrest and detention.

21

SAG VI:  *BRADY*[5] VIOLATIONS

Mr. Nave contends the State committed multiple *Brady* violations by suppressing the evidence that I.V.'s cousin disclosed a sexual assault against her and by allowing I.V. to perjure herself with inconsistent statements.  Mr. Nave misconstrues what a *Brady* violation is.

A *Brady* violation requires proof of three elements: "[(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued."  *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).  When viewing the second element, the key factor is that the State must be in possession of evidence that it does not turn over to the defense and that evidence must have been unobtainable to the defense through its own investigation.  *Id.* at 895-96.

Mr. Nave complains the State committed a *Brady* violation when it successfully prevented him from inquiring about I.V.'s cousin's allegation against a family member and when a detective suggested to I.V. that Mr. Nave had oral contact with her.  Neither

---

[5] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

of these complaints involve the State failing to turn over evidence to Mr. Nave.  Mr. Nave was aware of the evidence, sought to have the cousin's allegation admitted, and asked questions at trial about the detective's purported improper suggestion.

SAG VII:  EVIDENCE OF MR. NAVE'S FLIGHT

Mr. Nave repeats the arguments raised above about the trial court allowing evidence of flight.  Because we have addressed this issue above, we do not do so again here.

SAG VIII:  EVIDENCE NAVE PREVIOUSLY TOUCHED I.V. INAPPROPRIATELY

Mr. Nave repeats the arguments raised above about the trial court allowing evidence of his prior touching of I.V.  Because we have addressed this issue above, we do not do so again here.

SAG IX:  I.V.'S COUSIN'S STATEMENTS

Mr. Nave repeats the arguments raised above about the trial court excluding evidence that I.V.'s cousin alleged a family member sexually abused her.  Because we have addressed this issue above, we do not do so again here.

No. 36488-7-III
*State v. Nave*

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Korsmo, A.C.J.                                    Siddoway, J.

24